## COLA v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
December 5, 1927.

No. 5118.

Criminal law ⬤⟞395—Search, without warrant, of dwelling house and dugout, during owner's absence, held unlawful, and liquor seized inadmissible.

That prohibition officers had reason to believe that intoxicating liquor was being or had been unlawfully made somewhere about the premises did not authorize them to enter dwelling house, in which defendant and his family resided, during temporary absence of the family, to make a search without a search warrant; but such a search invaded defendant's constitutional rights, and evidence discovered in the cellar and in a dugout at end of 30-foot tunnel leading from cellar was inadmissible in prosecution against defendant.

In Error to the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Julius Cola was convicted of violating the liquor laws (17 F.[2d] 829), and he brings error. Reversed, with directions.

Dan T. Malloy, of Butte, Mont., for plaintiff in error.

Wellington D. Rankin, U. S. Atty., and L. V. Ketter and John Collins, Asst. U. S. Attys., all of Helena, Mont.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. Plaintiff in error was convicted upon four counts, charging, severally, the manufacture of intoxicating liquor, possession of property designed for that purpose, possession of liquor, and the maintenance of a nuisance. The evidence was in the main procured by a search of his premises at Meaderville, Mont., and, as stated in his brief, the only question here raised is of the validity of the search.

The premises consisted of a town lot, upon which was a small dwelling house, where the defendant, with his wife and child, had resided for several years. No one was at the premises at the time of the search, but upon going away four or five days prior thereto defendant had informed his neighbor where he could find the key, and had requested him to start a fire in the stove in case of cold weather, to avoid damage to the plumbing. Having been informed that liquor was being manufactured upon the premises, the prohibition agents went there about noon on November 30, 1926, and as they approached they detected a strong odor of fermenting mash. They had no warrant, either for a search or for the arrest of defendant, but on finding the door locked, and being informed by the neighbor, who observed them on the premises, of the absence of defendant, they raised a window and, entering by that means, made the search in question. In the house was furniture of various kinds, but, as they testified, it was in confusion, "bungled up," and "scattered around." There were also running water, electric lights, and telephone.

Finding nothing of criminal import in the rooms, the officers entered the cellar through a trap door from the kitchen or pantry, and there found a large quantity of wine, approximately 17 50-gallon barrels. Observing a small tunnel leading from the cellar, they crawled through it for about 30 feet, and came into a dugout, consisting of two compartments, directly under a garage. Here they found a complete 65-gallon still, measurably complete, with indications of prior operation, but not at the time in actual use; also 29 50-gallon barrels of mash and some other properties. Apparently the only way of approach to the dugout was through the tunnel. Soon after the officers returned to the house the defendant and his wife arrived, and following a conversation, which is not presently material, defendant was placed under arrest.

Upon the undisputed facts we feel bound to hold the house constituted the actual residence of the defendant and his family; its character was not affected by their temporary absence. Nor are we able to make any distinction in principle between discoveries made in the cellar proper and those made in the dugout. Both resulted directly from the entry of the dwelling and but for such entry neither of them would have been made. It will thus be seen the underlying question of law is within narrow compass, and we are not concerned with the right of an officer to enter what is a dwelling house only in pretense, or to search in open fields, or in yards or outbuildings, or even in a disconnected portion of a structure which in the main constitutes a dwelling. Applying the rule of Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, it must be held, we think, that under the circumstances stated the entry of defendant's residence was an invasion of his constitutional rights. See, also, Temperani v. United States (C. C. A.) 299 F. 368; Bell v. United States (C. C. A.) 9 F.(2d) 820; Schroeder v. United States (C. C. A.) 14 F.(2d) 500.

A suggestion to the contrary notwithstanding, this is not to hold that knowledge may not be acquired through the sense of smell, as by means of other senses. Assuming that the odor of fermented fruits or grains is unmistakable, after all, it is sometimes only a circumstance tending to prove either that an offense was being or had been committed. The most that can be said for the officers is that, when they entered the house, they had reason to believe that intoxicating liquor was to be, or was being, or recently had been, manufactured somewhere about the premises, and that they entered, not to make an arrest, but to make a search.

In the Agnello Case there were circumstances tending to induce the belief that Agnello had in his home a supply of narcotics, but said the court: "The protection of the Fourth Amendment extends to all equally, to those justly suspected or accused, as well as to the innocent. The search of a private dwelling without a warrant is in itself unreasonable and abhorrent to our laws." And again: "Save in certain cases as incident to arrest, there is no sanction in the decisions of the courts, federal or state, for the search of a private dwelling house without a warrant."

Raine v. United States (C. C. A.) 299 F. 408, and Koth v. United States (C. C. A.) 16

F.(2d) 61, are not thought to be comparable; the searches were of open fields. Miller v. United States (C. C. A.) 9 F.(2d) 383, furnishes a closer analogy; but it was there said that, before the officers entered the building, the door of which was open, they had such information, both from what they saw and what they smelled, as to authorize them to arrest the defendant, who was present, and to take into their custody the instruments and evidence of the crime which was being committed, thus apparently bringing the further search they made within the exception noted in the Agnello Case.

Reversed, with directions to grant a new trial.