STATE v. FRED MILLS.

(Filed 22 May, 1957.)

**1. Searches and Seizures § 2—**

Where the affidavit upon which a search warrant is issued describes defendant's premises with sufficient definiteness to identify it, and such description is made a part of the search warrant by proper reference, objection to the search warrant on the ground that it did not describe the premises with sufficient definiteness, is untenable. G.S. 18-13.

2. Same—

A search warrant is a mandate giving authority for the search of the premises therein described and at the same time limits the scope of the mandate to such premises. Therefore, a warrant for the search of defendant's dwelling at a certain locality, together with barn and outhouses, etc., does not authorize the officer to go into the home of another party, located on the adjoining lot, and search a room there rented by the defendant.

3. Searches and Seizures § 3—

Where an officer reads the search warrant to the owner of the premises therein designated, the mere fact that the defendant is present and stands by as the owner states to the officer that she had rented the back room to the defendant and that the officer could search all of the house except this room, is not a waiver of the right of defendant against the unlawful search by the officer of the room rented by defendant.

4. Searches and Seizures § 1: Constitutional Law § 19a—

Immunity from unreasonable search and seizure is a personal right and the question of the legality of a search can be raised only by those whose rights are thereby infringed.

5. Same—

Where a search warrant authorizes the search of a certain dwelling, the owner of the dwelling may not object to the search of a room therein rented by the owner to defendant, but the defendant who rented the room has the right to challenge the legality of the search of this room under the warrant.

6. Same—

The fundamental law protects a person from the search of his private dwelling without a warrant, which protection extends to all equally, the guilty as well as the innocent. Constitution of North Carolina, Art. I, Sec. 15. Constitution of United States, Fourth Amendment.

7. Searches and Seizures § 1—

A warrant for the search of a dwelling house does not authorize the search of a room in the dwelling rented by a person not named in the warrant.

8. Criminal Law § 43—

The admission in evidence of intoxicating liquor discovered as a result of an unlawful search of defendant's premises, is prejudicial error. G.S. 15-27.

9. Intoxicating Liquor § 9a—

A warrant charging defendant with possession of a quantity of non-tax paid liquor together with other illegal whisky and beer for the purpose of unlawful sale does not restrict the charge to non-tax paid liquor, since the possession of tax paid liquor for the purpose of sale is within the purview of the phrase "other illegal whisky."

**10. Intoxicating Liquor § 9d—**

Evidence of defendant's possession of 7 pints of tax paid whisky of various brands, a pint of gin and 33 cans of different kinds of beer, together with evidence that a hundred empty pint whisky bottles were found strewn under his dwelling, *is held* sufficient, unaided by any presumption, to be submitted to the jury on a charge of unlawful possession of intoxicating liquor for the purpose of sale.

**11. Criminal Law § 14—**

The Superior Court, on appeal from conviction in the county court, has jurisdiction to try defendant only for the specific misdemeanor upon which he had been tried and convicted in the county court.

APPEAL by defendant from *Clarkson, J.*, Regular January Term 1957 of McDOWELL.

Criminal prosecution on the warrant of an inferior court charging that the defendant Fred Mills on 8 December 1956 "unlawfully, wilfully and feloniously did have in his possession a quantity of non-tax paid liquor, and did have in his possession a said quantity of non-tax paid liquor together with other illegal whisky and beer for the purpose of unlawful sale."

This warrant was issued on 8 December 1956 by Roy L. Griggs, a Justice of the Peace of McDowell County, and made returnable by virtue of G.S. 15-24 to the County Criminal Court of McDowell County, which was established under the authority of G.S. Ch. 7, Art. 36. The Minutes of the County Criminal Court are as follows: "December 12, 1956. STATE v. FRED T. MILLS #4501. Possession for sale. Defendant plead not guilty. Court finds defendant guilty." From a judgment of imprisonment the defendant appealed to the Superior Court.

In the Superior Court the defendant pleaded not guilty. It was stipulated by the Solicitor for the State and defendant's counsel that the defendant was tried in the Superior Court upon the same warrant he was tried on in the County Criminal Court. The Judge of the Superior Court in the beginning of his charge to the jury read the warrant, and immediately thereafter instructed the jury that the warrant had two counts, one charging the unlawful possession of non-tax paid whisky, and the other charging the unlawful possession of non-tax paid whisky and other illegal whisky and beer for the purpose of sale. The jury returned a verdict "guilty as charged."

From a judgment of imprisonment, defendant appeals.

*George B. Patton, Attorney General, and Harry W. McGalliard, Assistant Attorney General, for the State.*

*I. C. Crawford and Lawrence C. Stoker for Defendant, Appellant.*

PARKER, J.   On 8 December 1956 Roy L. Griggs, a Justice of the Peace for McDowell County, issued the warrant in this case upon the sworn complaint of Dallas Owens, a Deputy Sheriff of the County. On the same day Dallas Owens swore to and subscribed an oath before Justice of the Peace Griggs stating "that he is informed and believes that Fred Mills has in his possession intoxicating liquors for the purpose of sale located in his dwelling, garage, filling station, barn and outhouses and cars and premises, which is located on Yancey Road and near Yancey Lake which is located in Marion Township, McDowell County, N. C." Whereupon, Justice of the Peace Griggs issued a search warrant authorizing and commanding the Sheriff or any Lawful Officer to enter upon the premises of the defendant located as stated in Deputy Sheriff Owens' sworn complaint, and make search of the same, "seizing all intoxicating liquors, containers and other articles used in carrying on the illegal handling of intoxicating liquors, and arrest the person or persons having the same in possession.   Herein fail not, and of this warrant make due return."

On the same day Dallas Owens swore to and subscribed before the same Justice of the Peace an identical oath in respect to Laura Lewis, and the Justice of the Peace issued an identical search warrant against her.

Deputy Sheriff Owens made his returns on the search warrants to the effect that they were executed about 2:00 p.m. on the day of their issuance.   It is plain from the record that the search warrants were made returnable before the McDowell County Criminal Court.

The State's evidence—the defendant introduced none—presents these facts:  Dallas Owens armed with these two search warrants on 8 December 1956, went to a small store building on the Yancey Road about a mile from Marion, which the defendant said was his residence.   The defendant was there.   He had been staying there about two years, and Owens had seen him there on numerous occasions.   This building is a 12 by 14 one-room, one-story building with a basement under it.   A counter runs across the front of the room, and in the room there was a Pepsi-Cola cooler on the right side, a television set, a bed in the back, towels, sheets, and other bed clothing.   Wearing clothes were hanging on the wall.   In the room was a stove and a hot-plate.   There were no groceries or dry goods in the room.   There is a gasoline tank in front, but the defendant sold no gas there.   Owens testified that this was the only place of business or house the defendant had to his knowledge near Yancey Road and Yancey Lake, until later on in the search.   Owens searched this room, and found in it 7 pints of bonded, tax paid whisky of various brands, 1 pint of Gordon's Gin and 33 cans of different kinds of beer in the Pepsi-Cola cooler.   Under this building Owens found 100 dirty, empty pint whisky bottles.

After searching the one-room building, Owens went to the house about thirty feet away where Laura Lewis lived. There is only a yard between the two buildings. He read the warrant to search her dwelling to her. After he had read it, the defendant came over. Laura Lewis told Owens in the defendant's presence that she had rented the back room on the back porch of her home to the defendant, and that he could search all of her house except this room. Owens searched this back room, and found in it 7 cases of beer, 8 pints of non-tax paid whisky, 11 pints of gin, 9 pints of vodka and 41 pints of assorted brands of bonded whisky. In this back room was a bed with no cover on the mattress. Owens did not recall whether there was clothing in it or not. Owens searched the Lewis dwelling and the back room therein rented to defendant under the search warrant issued against her.

Laura Lewis testified as a witness for the State. She said the defendant rented her back room on 7 February 1955 at the time he rented the other building from her. That the defendant told her he was in the second hand car business, and he needed more sleeping room for some of the boys working for him to sleep in. Part of the time defendant paid her the rent, and sometimes the boys handed it to her. Somebody slept in the room. She testified on cross-examination, "I think it was the boys, other than Fred Mills, that slept in there, because they were the ones I saw come in there."

The defendant contends that the affidavit and search warrant against him do not describe the premises to be searched with sufficient certainty. Judging the affidavit of Deputy Sheriff Owens attached to the search warrant against the defendant, by the requirements of G.S. 18-13, and comparing it with the affidavit in S. v. McLamb, 235 N.C. 251, 69 S.E. 2d 537, and the affidavit in full in the record on file in the Clerk's Office in S. v. Brady, 238 N.C. 404, 78 S.E. 2d 126, it appears that the description in Owens' affidavit of the premises of the defendant to be searched is sufficiently particular and definite to justify the Justice of the Peace in issuing the search warrant to search the premises of the defendant therein described. Such description is made a part of the warrant by proper reference. 47 Am. Jur., Searches and Seizures, p. 523. This contention is without merit.

The 7 pints of tax paid, bonded whisky of various brands, the 1 pint of Gordon's Gin and the 33 cans of beer of three different kinds in the Pepsi-Cola cooler found in the one-room store building occupied by the defendant were properly admitted in evidence, because the search of this building was authorized by the search warrant. The warrant charged the defendant not only with the unlawful possession of non-tax paid liquor for sale, but also with the unlawful possession of other illegal whisky and beer for the purpose of sale.

In the instant case the back room in Laura Lewis' home rented to defendant by her was not included in the oath of Deputy Sheriff Owens for a search warrant for the premises of the defendant, and it was not included in the search warrant against the defendant, which search warrant was the only mandate Deputy Sheriff Owens had to search the premises of the defendant. This mandate gave authority to the officer to search defendant's premises described therein, and at the same time limited the scope of his authority. It did not authorize him to go into the adjoining home of Laura Lewis, and search a room there rented by defendant.

In *People v. Bawiec*, 228 Mich. 32, 199 N.W. 702, the search warrant described with particularity the defendant's dwelling house, which was to be searched for intoxicating liquor. The place searched was an old log house some 18 or 20 feet away and disconnected from the dwelling house, but within the curtilage. The Supreme Court of Michigan said, "the sole question presented is whether the search warrant authorized the search of any building other than the one described in the affidavit and writ." Later on the Court said: "We have not thus far held that a search warrant made valid by a definite description pointing only to a specific building and directing a search therein justifies a search of another building not described although located in the same vicinity. Nor do we think we should so hold. It is permissible to direct in one warrant the search of the house and outbuildings within the curtilage." See *Larthet v. Forgay*, 2 La. Ann. 524, 46 Am. Dec. 554; *Robie v. State*, Crim. App. Texas, 36 S.W. 2d 175; *People v. Castree*, 311 Ill. 392, 143 N.E. 112, 32 A.L.R. 357.

In 79 C.J.S., Searches and Seizures, pp. 901-902, it is written: "While the officers executing a search warrant may search the premises described therein, or within the scope of the description, they may not, under the authority of a search warrant, search any place other than that described therein, even though such other place is owned or controlled by the same person; and, if they do so, the search is illegal and 'unreasonable' under the constitutional guaranty." See Annotation 31 A.L.R. 2d 864 *et seq.*, as to the propriety and legality of issuing only one search warrant to search more than one place or premises occupied by the same person, when the several places to be searched are described in the warrant.

The evidence does not support the State's contention that the defendant consented to the officer's search of the back room he rented in the dwelling house of Laura Lewis, and thereby waived his right against an unlawful search of this room. *S. v. McPeak*, 243 N.C. 243, 90 S.E. 2d 501; 47 Am. Jur., Searches and Seizures, Sec. 71.

In respect to the search of the back room in Laura Lewis' dwelling under the search warrant issued to search her premises, we are con-

fronted with these questions: one, does the defendant have any standing to question the legality of the search of this room, and two, if so, did the warrant to search the dwelling house of Laura Lewis authorize the search of this room rented by him?

Immunity from unreasonable search and seizure is a personal right. The legality of a search of a room in a building can be raised only by those whose rights thereunder have been infringed. *Goldstein v. U. S.,* 316 U.S. 114, 86 L. Ed. 1312; *Steeber v. U. S.,* 198 F. 2d 615, 33 A.L.R. 2d 1425; 79 C.J.S., Searches and Seizures, Sec. 52, where many cases are cited; Annotation, U. S. Supreme Court Reports, 96 L. Ed., pp. 66 *et seq.* Interest in property as requisite of accused's standing to raise the question of constitutionality of search and seizure—federal cases.

In Blackstone's Commentaries, Vol. 4, p. 1620, Ed. William Draper Lewis, Sir William Blackstone wrote: "A chamber in a college or an inn of court, where each inhabitant hath a distinct property, is to all other purposes as well as this, the mansion house of the owner. So also is a room or lodging in any private house the mansion for the time-being of the lodger, if the owner doth not himself dwell in the house, or if he and the lodger enter by different outward doors. . . . But if I hire a shop, parcel of another man's house, and work or trade in it, but never lie there, it is no dwelling house. . . ."

In 79 C.J.S., Searches and Seizures, Sec. 54, it is written: "Where premises are leased or rented to another, and in the possession of such lessee or tenant, the owner may not complain of an unauthorized search made thereupon, even though the officers pass through unleased property. The lessee claiming the property seized may do so, but only as to that part of the premises over which his lease extends."

In 79 C.J.S., Searches and Seizures, p. 790, it is said: "A rooming house is also protected against unreasonable searches and seizures, as is a person's room in an apartment house, hotel, rooming or boarding house, or in a tourist camp."

The State cannot maintain that defendant rented the back room from Laura Lewis for the purpose of convicting him, and was not in possession and had no right to challenge the legality of the search of this room for the purpose of searching it. The defendant has a right to raise the question of the legality of the search of the back room in Laura Lewis' home, because he not only had possession of the back room, but had rented it from Laura Lewis. *U. S. v. De Bousi,* 32 F. 2d 902; *Coon v. U. S.,* 36 F. 2d 164; *Brown v. U. S.,* 83 F. 2d 383; *Steeber v. U. S., supra; Williamson v. State,* Texas Crim. App., 244 S.W. 2d 202; *Tarwater v. State,* Texas Crim. App., 267 S.W. 2d 410; Annotation, U. S. Supreme Court Reports, 96 L. Ed. p. 79; Cornelius, Search and Seizure, 2d Ed., pp. 56-57.

In 48 C.J.S., Intoxicating Liquors, p. 626, it is written under the heading "Description of Premises or Thing to be Searched," p. 626: ". . . and where the premises described are owned or occupied by two or more persons, a description which fails to specify the owner or occupant has been held insufficient."

In *Williams v. State,* 95 Okla. Crim. 131, 240 P. 2d 1132, 31 A.L.R. 2d 851, the 12th headnote in A.L.R. reads: "A search warrant directed against a building occupied by separate families must, by proper exception, eliminate from the search those portions occupied by persons other than the one against whom the warrant was issued, as otherwise the warrant would constitute a blanket warrant."

In *U. S. v. Innelli,* 286 F. 731, the Court said: "If the place described by street and number is used by a number of persons for different purposes, then it is not a place; but there are several places included in the one description. It is then a general, but not a 'particular,' description. The evidence upon which the warrant issued should go to all the essential features of the authority given, and the particular place to be searched is one, and an important one."

In Cornelius, Search and Seizure, 2d Ed., pp. 496-497, it is said: "Upon principle, therefore, where there is more than one business or tenant occupying separate apartments under premises designated by the same street number, merely describing the premises by such street number in the affidavit or warrant, is insufficient. Under such circumstances both the warrant and affidavit should go further and designate the particular portion of the premises located at such street number, wherein the unlawful acts, are being or have been committed, and the search warrant should be confined to that particular portion of the premises." In *S. v. Hanford,* 212 N.C. 746, 194 S.E. 481, the search warrant authorized the officer to search the premises of one Lacey Scott for intoxicating liquor. A back room in defendant's home was occupied by Scott, to whom defendant had rented it. The Court said: "There was no evidence tending to show that the officer searched the premises of the defendant Marvin Hanford, under the search warrant in his possession at the time he went to defendant's home. He searched only the premises of Lacey Scott, as he was authorized to do under a valid search warrant."

The search warrant authorizing the officer to search the dwelling house of Laura Lewis, and the affidavit of the officer upon which it was issued, have no mention of the defendant, and the search warrant did not authorize the officer to search the back room in this house rented to the defendant.

The Courts seem agreed (with exceptions not relevant here, *In re Walters,* 229 N.C. 111, 47 S.E. 2d 709; *Agnello v. U. S.* 20, 70 L. Ed. 145, 149) that the fundamental law of State and Federal Constitu-

tions, or Bill of Rights, protects the privacy of anything deemed a dwelling house, and that "the search of a private dwelling without a warrant is, in itself, unreasonable and abhorrent to our laws." *Agnello v. U. S., supra; In re Walters, supra;* N. C. Const., Art. I, Sec. 15; U. S. Const., Amend. IV; 47 Am. Jur., Searches and Seizures, Sec. 16; 79 C.J.S., Searches and Seizures, Sec. 12. See *S. v. Shook,* 224 N.C. 728, 32 S.E. 2d 329. This protection extends to all equally: to those justly accused, as well as to the innocent.

The distinction between the search of a dwelling house and the search of open fields not within the curtilage is as old as the common law. *S. v. Harrison,* 239 N.C. 659, 80 S.E. 2d 481; *Hester v. U. S.,* 265 U.S. 57, 68 L. Ed. 898.

Laura Lewis testified for the State that the defendant rented from her the back room on the back porch of her dwelling house, and said he needed more sleeping room for the boys working for him to sleep in, and that someone slept in the room. Her testimony as to who she thought slept there is an opinion, not a fact. The State contends that defendant was in possession of this room and the intoxicating liquor found there. Can it be said from the evidence that the defendant never slept in this room? Frequently persons have two dwelling houses in which at different times they sleep. It is true there was no cover on the mattress in the back room. However, a dwelling house does not lose its character as such by the temporary absence of the occupant. *Steeber v. U. S., supra; Cola v. U. S.,* 22 F. 2d 742; Annotation, 33 A.L.R. 2d, pp. 1430-1431.

When the officer was told by Laura Lewis that the defendant rented the back room in her dwelling house, he should have procured a proper search warrant against the defendant to search it before searching it. In our opinion, the search of this back room in Laura Lewis' home rented by the defendant without a valid search warrant to search it cannot be upheld under the circumstances here disclosed. The search of such room "was made under conditions requiring the issuance of a search warrant," and the admission in evidence of the intoxicating liquor found there is prohibited by G.S. 15-27, and was prejudicial error. The testimony as to what was found there should have been excluded. Defendant's assignments of error in respect to the admission of such evidence are sustained.

The next question presented is, was the intoxicating liquor found in the small store building sufficient to carry the case to the jury, and to override defendant's motion for judgment of nonsuit?

The Deputy Sheriff testified no non-tax paid whisky was found in this building. It would seem that the taxes had been paid on the pint of Gordon's Gin and the beer. The warrant upon which the defendant was tried charged the possession of a quantity of non-tax paid liquor

together with other illegal whisky and beer for the purpose of unlawful sale. This charge is not restricted to non-tax paid liquor.

McDowell County has not elected to come under the Alcoholic Beverage Control Act. If the State has established nothing more than that this one-story building was the defendant's private dwelling, and that he had in it only 7 pints of whisky of various brands, 1 pint of Gordon's Gin and 33 cans of different kinds of beer, upon all of which the tax has been paid, while this building was occupied and used by him as his dwelling only (*S. v. Hardy*, 209 N.C. 83, 182 S.E. 831; *S. v. Carpenter*, 215 N.C. 635, 3 S.E. 2d 34), the motion for judgment of nonsuit should have been allowed. G.S. 18-11, 18-32; *S. v. Barnhardt*, 230 N.C. 223, 52 S.E. 2d 904. However, the State has offered evidence tending to show by independent evidence, unaided by any presumption, that this one-story building was used and occupied by the defendant as a place to sell intoxicating liquors as well as a residence, and that the possession of the intoxicating liquor found therein was for the purpose of sale. Deputy Sheriff Owens found under this building 100 dirty, empty pint whisky bottles. This Court said in *S. v. Libby*, 213 N.C. 662, 197 S.E. 154: "The empty bottles strewn around the store constitute evidence that whisky had been consumed upon the premises and tended to assist in establishing that the defendant possessed whisky for the purpose of sale." These 100 dirty, empty pint whisky bottles, the various brands of whisky and beer and the pint of Gordon's Gin permit the reasonable inference that the defendant had in stock many brands of alcoholic beverages to appeal to and to meet the different tastes and desires of thirsty purchasers of such liquors. There is no evidence that the defendant drinks any kind of alcoholic beverages. The evidence negatives the theory that the defendant is engaged in any lawful work, except his statement to Laura Lewis when he rented the place in February 1955 that he was in the second hand car business. There is no evidence that any such cars were there.

The evidence was sufficient to carry the case to the jury on the charge of unlawful possession of whisky and beer for the purpose of sale. Certainly, if the defendant possessed whisky for sale, it was illegal whisky.

There is no competent evidence tending to show that the defendant was guilty of the unlawful possession of non-tax paid whisky, and it was improper to submit that charge in the warrant to the jury.

The defendant contends that he was convicted in the County Criminal Court only on the charge of the unlawful possession of intoxicating liquor for the purpose of sale, and the State in its brief says such contention seems clear from the record. In the view we have taken of the case, whether such contention is true or not, is academic.

The Superior Court of McDowell County had jurisdiction on appeal to try the defendant only for the specific misdemeanor charged in the

warrant, upon which he had been tried and convicted in the inferior court. *S. v. Hall,* 240 N.C. 109, 81 S.E. 2d 189.

For error in the admission of evidence there must be a

New trial.