STATE OF NORTH CAROLINA v. WILLIE JAMES WOODARD

No. 7720SC867

(Filed 21 March 1978)

**Searches and Seizures § 39— warrant to search dwelling—search of room rented to defendant—no exclusive control by defendant—no knowledge by officers**

> The search of a bedroom and closet in the bedroom rented by defendant in his uncle's home pursuant to a warrant to search the uncle's home was lawful, and stolen clothing seized from the closet was properly admitted in evidence against defendant, where the evidence on voir dire showed: (1) defendant did not exercise sole or exclusive control over the bedroom and closet but shared them with the uncle's children, and (2) even if defendant had sole or exclusive control over the bedroom and closet, the officers did not know and had no reason to know that defendant exercised such control since the uncle was in the bedroom exercising apparent control during the search, and the officers had no reason to know that defendant paid rent on the room or had any interest in it to the exclusion of the owner.

APPEAL by defendant from *Barbee, Judge.* Judgment entered 25 May 1977 in Superior Court, STANLY County. Heard in the Court of Appeals 7 February 1978.

The defendant, Willie James Woodard, was indicted for felonious breaking and entering and felonious larceny. Upon his pleas of not guilty to each of the charges, the jury returned verdicts finding him not guilty of felonious breaking and entering and guilty of felonious larceny. The defendant having been found not guilty of breaking and entering and no evidence having been introduced as to the value of the goods stolen, the trial court on its own motion entered a verdict of guilty of misdemeanor larceny. From judgment sentencing him to imprisonment for a term of two years, defendant appealed.

The State's evidence tended to show that on 8 December 1975, Rebecca Hill was manager of the Oakboro Clothing Store in Oakboro, North Carolina. She left the store at 5:30 p.m. on that date. At the time of her departure, all of the doors to the store were locked and all windows closed. She returned at approximately 12:00 midnight, pursuant to a call from the Stanly County Sheriff's Department, to find the front door broken in and the back door open. An inventory revealed that numerous items of men's and women's clothing were missing from the store.

The State's evidence also tended to show that, on 10 January 1976, Jack C. Thomas, Chief of Police of Oakboro, North Carolina, searched the J. T. Jackson residence pursuant to a search warrant. Prior to searching, Chief Thomas read the search warrant in its entirety to Mr. Jackson and gave him a copy. He, with other officers, then proceeded to enter the home. The officers entered the first bedroom on the right after going through the kitchen. They found the defendant asleep on one of two beds in the room. A closet door in the bedroom was ajar, and the officers could observe both new and used clothes within. At the time the officers removed each item of clothing, later identified by Rebecca Hill as coming from the store, the defendant asked: "What are you doing with my clothing?"

Chief Thomas made an inventory of the items of clothing seized pursuant to the search warrant and gave a copy of the inventory to Mr. J. T. Jackson. Mr. Jackson made his mark on the inventory sheet to acknowledge its receipt, and his wife signed her name to the same sheet. The officers then called Rebecca Hill to the Oakboro Police Department where she identified each item from the closet as an item missing from her store.

The defendant objected to the identification of the items of clothing and to their admission into evidence and moved that they be suppressed as the fruits of an unlawful search and seizure. After conducting a hearing *voir dire* and making findings of fact and conclusions of law, the trial court denied the motion to suppress and permitted the evidence to be identified and introduced over the defendant's objection. At the close of the State's case, the defendant chose not to offer evidence and rested.

Other relevant facts are hereinafter set forth.

*Attorney General Edmisten, by Associate Attorney Thomas F. Moffitt, for the State.*

*John M. Bahner, Jr., for the defendant appellant.*

MITCHELL, Judge.

The defendant's sole assignment of error is directed to the trial court's overruling his motion to suppress the introduction into evidence of the items of clothing and his objection to testimony concerning those items. He contends the clothing seized pursuant

to a search warrant and introduced in evidence was the product of an unlawful search and seizure prohibited by the Fourth Amendment to the Constitution of the United States.

On *voir dire* the evidence for the defendant tended to show that he rented a room in the home of his uncle, J. T. Jackson, for $15 a week and shared the room and a closet in the room with Jackson's son Robert. Both the defendant and Robert Jackson kept their clothes in this closet, and J. T. Jackson's daughters on occasion used the closet. The defendant's evidence further tended to show that he was asleep on one of the two beds in the bedroom when police entered the room and conducted a search. The defendant was never shown a search warrant and never consented to the search.

The State's evidence on *voir dire* tended to show that Jack C. Thomas, Chief of Police of Oakboro, North Carolina, pursuant to a lawful warrant authorizing him to search the premises of J. T. Jackson, searched those premises on 10 January 1976. The warrant was read to J. T. Jackson prior to the search, and he was given a copy of both the search warrant and the supporting affidavit. During the search on 10 January 1976, no one informed the police that the defendant was renting a room or that any portion of the home was not under J. T. Jackson's control as owner of the premises.

The State's evidence on *voir dire* tended to show that the closet in the bedroom was actually used by the defendant, Robert Jackson and two of Robert Jackson's sisters. The defendant never told anyone to stay out of the room or closet, and no one ever asked the defendant's permission prior to going into the room or closet. The only items removed from the house by police were items of new clothing found in the closet in the defendant's bedroom which matched the description of the missing clothing.

The search was conducted in the presence of both the defendant and J. T. Jackson, and Jackson identified each item of clothing for the police. With the exception of the defendant's questions as to what was being done with his clothes, neither the defendant nor anyone else ever informed the police during the search that the defendant had any interest in or control over the bedroom or the closet. Upon completing the search, the police gave J. T. Jackson an inventory of items seized during the search.

The trial court made findings substantially incorporating this evidence for the defendant and the State and concluded that, during the search, J. T. Jackson was in apparent control of the premises. The court also concluded that, in fact: "The defendant did not have exclusive control of the bedroom in which he slept or the closet in the bedroom." For these reasons the trial court concluded that the search and seizure was lawful.

The defendant does not contend here, nor did he contend at trial, that the search warrant for the home of J. T. Jackson was invalid on its face or improperly issued. Rather, he contends that the evidence seized from the room which he rented within the Jackson home could not be used against him, as the warrant for the home was a general warrant. He takes the position that he had exclusive control of the bedroom, and a warrant directed to him and describing the room with particularity was required. We do not agree.

In support of his contentions, the defendant relies upon the case of *State v. Mills*, 246 N.C. 237, 98 S.E. 2d 329 (1957). That case involved a search, pursuant to a warrant, of the home of the defendant's lessor. *Mills* is distinguishable, however, · as the uncontested facts there indicated that, prior to searching the defendant's room, the officers conducting the search were specifically informed by the lessor that the room was leased to defendant. The officers were also specifically informed by the lessor in *Mills* that she did not have authority to give the officers permission to search the room. Further, the uncontested evidence in *Mills* indicated the room in question was on the back porch of the lessor's dwelling house, that the lessor never entered the room and that both the lessor and the defendant recognized that the defendant had sole and exclusive control over the rented room. In *Mills* it was held that:

> When the officer was told by Laura Lewis that the defendant rented the back room in her dwelling house, he should have procured a proper search warrant against the defendant to search it before searching it. In our opinion, the search of this back room in Laura Lewis' home rented by the defendant without a valid search warrant to search it cannot be upheld under the circumstances here disclosed.

246 N.C. at 245, 98 S.E. 2d at 335.

State v. Woodard

In the present case the trial court made findings and conclusions, largely based upon uncontradicted evidence, that the defendant did not exercise sole or exclusive control over the bedroom or the closet in which the evidence was found. The evidence on *voir dire* clearly revealed that the defendant at all times shared both the bedroom and the closet with the children of J. T. Jackson. The premises belonged to Jackson, and the trial court specifically found that, during the search, he was at all times in apparent control of the entire premises. Additionally, Jackson was in the bedroom exercising apparent control while the police were conducting the search. Nothing in the record on appeal indicates that the officers knew or had any reason to know that the defendant paid rent on the room or had any interest in it to the exclusion of the owner.

The holding in *Mills* is generally recognized, and a search warrant directed against a multiple-unit structure must set forth with particularity the subunit to be searched. The better reasoned cases, however, hold this requirement inapplicable when the premises, or the portions thereof in question, are occupied in common by several individuals. Annot., 11 A.L.R. 3d 1330 (1967). This line of reasoning is consistent with the established principle that, where two individuals have equal rights to use or occupancy, either may consent to a search, and the evidence found therein may be used against the other. *State v. Penly*, 284 N.C. 247, 200 S.E. 2d 1 (1973); *State v. Melvin*, 32 N.C. App. 772, 233 S.E. 2d 636 (1977); *State v. Crawford*, 29 N.C. App. 117, 223 S.E. 2d 534 (1976). We hold that, as the bedroom and closet in question were occupied and used by the defendant and the Jackson family in common, the search warrant directed against Jackson and his premises was adequate to support the search of the closet and the seizure and introduction into evidence against the defendant of the items found therein.

Additionally, the evidence in this case was properly seized and admissible upon another separate and independent basis. Here, the evidence of both the defendant and the State and the conclusions of the trial court indicated the entire premises appeared to be within the control of the owner, J. T. Jackson. We conclude that, even had the bedroom and closet been under the sole and exclusive control of the defendant, the warrant and the search and seizure would not have been fatally defective. Where

officers do not know or have reason to know they are dealing with a multiple-unit dwelling, a search and seizure pursuant to a warrant authorizing the search of the entire dwelling is valid and evidence seized thereby is admissible. *United States v. Davis*, 557 F. 2d 1239 (8th Cir. 1977); *United States v. Jordan*, 349 F. 2d 107 (6th Cir. 1965); *United States v. Santore*, 290 F. 2d 51 (2d Cir. 1959), *aff'd in relevant part upon rehearing*, 290 F. 2d 74 (2d Cir. 1960) (en banc), *cert. denied*, 365 U.S. 834, 5 L.Ed. 2d 744, 81 S.Ct. 749 (1961); Annot., 11 A.L.R. 3d 1330 (1967) and cases cited therein.

We find both exceptions to the general requirement of *Mills*, that a search warrant directed against a multiple-occupancy structure must describe the area to be searched therein with particularity, to be present in this case. The officers did not know or have reason to know the defendant had sole or exclusive control over the bedroom or closet in the home described in the warrant. Additionally, the defendant did not, in fact, have sole and exclusive control over the bedroom or closet in that home. Either exception was sufficient to uphold the search, pursuant to the warrant for the Jackson home, of the room the defendant rented within the home.

The defendant had a fair trial free from prejudicial error, and we find

No error.

Judges MORRIS and CLARK concur.