### Hart v. State of Indiana.

[No. 24,573.    Filed November 19, 1924.]

1. ARREST.—*Commission of Misdemeanor Must be in Presence of Officer.*—Officers are not authorized to arrest for a misdemeanor without a warrant unless the misdemeanor is committed within their view.    p. 388.

2. SEARCHES AND SEIZURES.—*Breaking into Private Room Without Warrant.*—Officers are not authorized to break into and search private rooms without a warrant for the mere purpose of discovering evidence that a misdemeanor has been or is being committed, or of arresting a person suspected of committing one.    p. 388.

3. CRIMINAL LAW.—*Homicide.—Sufficiency of Evidence to Support Conviction.*—Evidence that while defendant, who was employed as a strike-breaker, was asleep in his room at the hotel, officers came and pounded on one of his doors, demanding admission, but without stating any reason for his arrest or that they had a warrant, and that in his attempt to unlock the other door the gun which he had in his hand was discharged at an angle not directed towards one outside but that it did hit and wound an officer out there, is not sufficient to sustain a judgment of guilty of assault with intent to murder.    p. 388.

From Cass Circuit Court; *Earl B. Stroup*, Special Judge.

Arthur Hart was convicted of assault with intent to murder and he appeals.    *Reversed.*

*Rabb, Mahoney & Fansler*, for appellant.

*U. S. Lesh*, Attorney-General, and *Mrs. Edward Franklin White*, Deputy Attorney-General, for the State.

EWBANK, J.—Appellant was charged by indictment with the offense of feloniously shooting at and wounding Gola Thomason, with intent thereby to kill and murder him. Being tried by the court without a jury, and found guilty, he was sentenced to imprisonment for not less than two nor more than fourteen years. Overruling the motion for a new trial is the only error assigned, under which appellant insists that the verdict is not sustained by sufficient evidence and is contrary to law. The evidence that tended most strongly to prove his guilt was as follows:

That at about one o'clock in the night three policemen knocked on the door that opened from the room appellant was occupying into the hall of his boarding house, and called out that they were officers, and for him to open the door; that the door of the room next to his was a few feet from it, and one of the officers put his foot and shoulder against that door and forced it open, and two of the policemen entered that room, which was empty, and put a key in the lock of the door between that room and the one appellant was occupying, and unlocked the door and pushed on it, but the door was also bolted and did not open; that they then "hammered" on that door and called out for appellant to open it— that the officers were there; that the third policeman had remained at the door which led from appellant's room into the hall, and while making no noise was turning the knob of that door, when a pistol shot from a gun that appellant held in his hand came through the door and struck him in the side, inflicting a slight wound.

But the witnesses for the state (all police officers) gave further testimony which was wholly uncontradicted, to the effect that there was a Yale "night latch" a few inches above the door knob on the door through

which the bullet passed; that the bullet hole on the inside of the door was about eight inches from the edge of the door, near and a little to the right of the Yale lock (but witnesses did not agree whether just above or just below a point even with that lock), and there was a blackened spot around the hole as if from burnt powder; that the bullet hole went through the panel of the door at an acute angle of about thirty degrees— nearer straight with the plane of the door than forty- five degrees—and one of the two unwounded policemen then fired a pistol shot through the door between the two rooms, and the other fired a shot in the hall; that when a policeman whose voice appellant recognized came to the room and told appellant to open the door he did so, and was found in his night gown, and his pistol was found lying on the dresser; that he quietly submitted to arrest; that appellant had been working as a "strikebreaker" in a shop a few squares away, and many of the men so working had been beaten and in- jured by persons who attacked them on their way to or from work or at their homes; and that when arrested appellant said he had thought it was some of the strikers outside his door who had come to beat him, and was frightened, and that his gun went off accidentally when he was trying to open the door with the gun in his hand by turning both latches at once. No evidence was offered tending to prove that appellant knew any- body was outside his door in the hall when the gun went off, or to the effect that the officers had a warrant for the arrest of appellant or authorizing them to search his room or any part of the boarding house, or, that they told him they had a warrant, or that appellant had been guilty of a felony and had fled with them in pursuit or had been reported to be then committing one, or that the officers even suspected him of being guilty of a felony; while appellant testified, without

contradiction, that no warrant was served on him, that he was not told they had a warrant, and that he had not been guilty of a felony and was not accused of having committed one. And appellant also testified, without contradiction, that he had not heard anybody at the door leading from his room into the hall, but had been asleep until he was awakened by the forcible opening of the door into the next room; that he did not understand what the men in that room were saying but when he heard them at the door between the two rooms he thought it was somebody who had come to beat him up; that every evening when he came from work he had been followed by strikers, threatening to "get" him, and every night or two they were beating up some one, and one night some fellow was thrown off the Sixth street bridge, and somebody was shot at; that appellant had been working from 6 a.m. until 6 p.m. at the shop and putting into the bank all the wages received for that work, and then working until 10 or 12 o'clock at night cleaning rooms, by which work he earned the money on which he lived; that when he heard somebody at the door between the two rooms he got out of bed and without putting on his clothes took his pistol in his hand and attempted to open the other door, which led into the hall, so that he might go around behind the people in the other room, and "see who was in the next room and would have a chance to fight it out with them", and was "going to protect myself"; that with the gun in one hand he tried to turn the night latch with that hand while he took hold of the door knob with the other, when the gun was accidentally discharged; that only one shot was fired and he did not mean to fire that shot; that immediately afterward a shot was fired from outside through the other door, and he went and hid behind the stove until the policeman whose voice he knew came to the door and told

him to open it.   There was evidence that the woman who rented and occupied the room, next to his, into which the officers forced their way, was in appellant's room, asleep in his bed, when the officers entered her room, and that she hid behind the dresser and was found hiding there, in her night clothes, when the officers were finally admitted.   But there was no evidence of facts showing that either appellant or she was guilty of a misdemeanor in doing what they did.   *Jackson* v. *State* (1888), 116 Ind. 464, 19 N. E. 330; *Powell* v. *State* (1918), 187 Ind. 76, 118 N. E. 354; *Tribbey* v. *State* (1918), 189 Ind. 205, 208, 126 N. E. 482.

And even if they were, it affirmatively appears that they were not committing that misdemeanor in view of the police officers.   While the authority of such

1.  officers to arrest for a misdemeanor without a warrant only extends to making arrests when the misdemeanor is committed within their view.   §9549, subd. 5, Burns 1914, §5976, subd. 5, R. S. 1881; §8782 Burns 1914, §161, Acts 1905 p. 236; *Doering* v. *State* (1874), 49 Ind. 56, 19 Am. Rep. 669; *Plummer* v. *State* (1893), 135 Ind. 308, 312, 34 N. E. 968; Ewbank, Indiana Crim. Law §110.

And they have no authority to break into and search private rooms without a warrant for the mere purpose of discovering evidence that a misdemeanor has

2.  been or is being committed, or of arresting a person suspected of committing one.   Art. 1, §11, Constitution of Indiana, §56 Burns 1914, §56 R. S. 1881.

The undisputed evidence shows that the police officers were committing a trespass in a violent and noisy manner, and that appellant had reason to and did

3.  fear that he would be beaten and injured because of the nature of his employment; and it fails to show or to justify an inference that he knew or had

reason to believe that the injured man was out in the hall at a place and in a position so that a bullet passing through the door at an angle of thirty degrees would strike him.

The evidence is not sufficient, and the verdict is therefore contrary to law.

The judgment is reversed, with directions to sustain appellant's motion for a new trial.