STATE v. BOBBY ROSS.

(Filed 29 March, 1967.)

**1. Constitutional Law § 29;　Jury § 3—**

The burden is upon defendant upon his challenge to the array and motion to dismiss the special venire to prove his ground of objection that there had been racial discrimination in the exclusion of Negroes from the jury list.

**2. Same—**

Where, upon defendant's challenge to the array and motion to dismiss on the ground of racial discrimination in the exclusion of Negroes from the jury list, defendant's evidence tends to show that the jury list was selected from the names appearing on the county tax lists, without discrimination as to race, and further, that the county officials sought to obtain the names of Negro residents of the county, not included in the tax books, to place them on the jury list, defendant's evidence fails to show racial discrimination in the selection of the jury. Fourteenth Amendment to the Constitution of the United States.

**3. Searches and Seizures § 1;　Constitutional Law § 33—**

Where, upon arrest of defendant in his home, defendant selects and puts on a particular pair of trousers, it is not error, nothing else appearing, to admit the trousers in evidence together with testimony as to the condition or contents of the garment, there being no element of unlawful search or seizure.

**4. Criminal Law § 71—**

Upon defendant's objection to a question in regard to an incriminating statement made by defendant while under arrest, the court should, upon

a *voir dire* hearing, ascertain whether the incriminating statement was voluntarily made after defendant had been apprized of his constitutional rights, and the admission of the statement in evidence without any hearing must be held for prejudicial error.

APPEAL by defendant from *Houk, J.,* at the July 1966 Session of CLEVELAND.

The defendant was indicted upon two counts, the first charging first degree burglary at the dwelling house of Oscar Patterson, Sr., in Shelby, and the second charging assault upon Oscar Patterson, Sr., with a deadly weapon with intent to kill, inflicting serious bodily injuries, not resulting in death. The jury returned a verdict of guilty on both counts, with a recommendation of life imprisonment upon the burglary charge. He appeals from a judgment sentencing him to imprisonment for life upon the charge of burglary, and imprisonment for 10 years upon the assault charge, the second sentence to begin at the expiration of the first.

The defendant contends that he should be granted a new trial on three grounds: (1) The denial of his motion to dismiss the special venire summoned after nine jurors had been selected from the regular jury panel, and the overruling of his challenge to the array; (2) the admission in evidence, over his objection, of a pair of trousers which he contends was taken from him in the course of an illegal search and seizure; and (3) the admission in evidence, over his objection, of testimony by a police officer as to a statement made by the defendant during police interrogation following his arrest.

The defendant alleged as the basis for his motion to dismiss the special venire and his challenge to the array that members of the Negro race, of which he is a member, were systematically excluded from jury service. The only evidence offered by him upon this question consisted of his examination of certain county officials. Their testimony was to the effect that the jury list, from which the names of the special venire were taken, included the names of all persons shown upon the tax lists of the county, without regard to race, plus additional names obtained by the use of telephone directories and inquiries to Negro school principals and Negro police officers. The testimony was that no person, whomsoever, was eliminated from the jury list by reason of race. The record does not indicate the racial composition of the jury by which the defendant was tried.

Testimony offered by the State was to the following effect:

Oscar Patterson, Sr., age 77, was awakened by a noise in his home at approximately 1:30 a.m. Going to investigate, he found in one of the rooms a Negro man who had broken into and entered the house. A scuffle ensued in which the intruder, armed with a knife,

cut Mr. Patterson severely about the face and other parts of the body. The intruder then fled, leaving upon the floor of the Patterson home a hat, which had fallen from his head during the scuffle. At the same time, two police officers were patrolling the area in a police car. They observed the defendant, who was well known to them, running rapidly not far from the Patterson residence. The officers gave chase but the defendant eluded them, crawling through a hole beneath a fence. The next day a blood stained knife was found beside this hole under the fence. Police officers went to the residence of the defendant's mother, with whom he lived, arriving there about 15 minutes after the defendant eluded them at the fence. They knocked on the door, identified themselves as police officers, stated that they wanted to see the defendant, and were invited to enter by the defendant's mother. They had no search warrant. They observed the defendant lying on a couch, apparently asleep. They shook him and told him he was under investigation and instructed him to get dressed. He selected and put on the trousers which were lying beside him and otherwise dressed himself. He accompanied the officers to the City Hall and was there placed under arrest. The following morning, they took these trousers from him, having obtained from his residence other clothing which they gave him to wear.

The hat found in the Patterson residence and the knife found beside the hole under the fence were placed in evidence without objection. The trousers were placed in evidence over objection. An expert witness testified that stains upon the knife and in one pocket of the trousers were made by human blood. Over objection, a police officer was permitted to testify that while the defendant was in custody, following his arrest, he showed the hat to the defendant and the defendant stated it was his hat. There was no evidence that, prior to this statement, the defendant had been warned of his right to remain silent and make no statement to the officers.

Subsequent to the defendant's arrest, Mr. Patterson picked him out of a lineup at the police station and identified him as the intruder. He also so identified the defendant in the courtroom.

The defendant did not testify but his mother testified in his behalf, stating that he was asleep in her home at the time the alleged offenses occurred.

*Attorney General Bruton and Staff Attorney Vanore for the State.*

*C. B. Cash, Jr., for defendant appellant.*

LAKE, J. There was no error in the denial of the defendant's

challenge to the array and motion to dismiss the special venire. The burden was upon the defendant to show the discriminatory exclusion of Negroes from the jury list, which he alleges as the basis for his motion and challenge. *State v. Corl,* 250 N.C. 258, 108 S.E. 2d 615. This he failed to do. On the contrary, his evidence is to the effect that there was no such discrimination. The Supreme Court of the United States has held that to select a jury panel from a list composed of persons whose names appear on the county tax lists, without discrimination as to race, does not violate the Fourteenth Amendment to the Constitution of the United States. *Brown v. Allen,* 344 U.S. 443, 73 S. Ct. 397, 97 L. ed. 469. In addition, the evidence offered by the defendant shows that the county officials, by inquiries to school principals and police officers, and by use of telephone and city directories, sought to obtain the names of Negro residents of the county whose names were not included upon the tax books. Furthermore, the record does not disclose the racial composition of the jury by which the defendant was tried.

There was no error in overruling the defendant's objection to the introduction in evidence of the trousers taken from the defendant while he was in custody. These trousers were not obtained by a search of his mother's residence. They were selected and put on by the defendant when the officers aroused him from the couch and told him to get dressed. After he was placed under arrest and given other clothes to wear, these trousers were taken and examined for blood stains. It is not an unlawful search or seizure for officers to take from the person under arrest and to examine an article of clothing worn by him. See: 47 Am. Jur., Searches and Seizures, § 53; 5 Am. Jur. 2d, Arrest, § 73; 6 C.J.S., Arrest, § 18. It is not error, nothing else appearing, to admit in evidence, over objection, testimony as to the condition or contents of such garments discovered by such examination or to admit in evidence the garment itself.

The defendant is, however, entitled to a new trial because of the admission in evidence, over his objection, of testimony by the police officer concerning the alleged statement by the defendant as to his ownership of the hat found on the floor of the Patterson residence following the flight of the intruder. The testimony that the defendant, upon being shown the hat, stated it was his was obviously prejudicial since it tended to identify the defendant with the intruder and thus to incriminate him.

In *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. ed. 2d 694, the Supreme Court of the United States said:

> "To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities and is subjected to questioning, the privilege against

self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. *But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.*" (Emphasis added.)

The record does not disclose that prior to the making of this incriminating statement the defendant was advised of his right to remain silent. In *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1, we said:

"When the State proposes to offer in evidence the defendant's confession or admission, and the defendant objects, the proper procedure is for the trial judge to excuse the jury and, in its absence, hear the evidence, both that of the State and that of the defendant, upon the question of the voluntariness of the statement. In the light of such evidence and of his observation of the demeanor of the witnesses, the judge must resolve the question of whether the defendant, if he made the statement, made it voluntarily and with understanding. [Citations omitted.] The trial judge should make findings of fact with reference to this question and incorporate those findings in the record."

The record discloses that when the officer-witness was asked by the solicitor what statement, if any, the defendant made to him with reference to the hat, the defendant objected and requested to be heard. The objection was overruled without any hearing of the defendant or any inquiry into the voluntariness of the confession or into the advice, if any, given him concerning his right to remain silent.

New trial.