STATE OF NORTH CAROLINA v. RICHARD DeWAYNE McCLOUD

No. 32

(Filed 13 May 1970)

**1. Criminal Law § 75—   objection to confession — necessity for voir dire**

Upon defendant's objection to testimony concerning his alleged confession, the trial court must conduct a voir dire in the absence of the jury to determine the voluntariness of the confession.

**2. Arrest and Bail § 3—   arrest without warrant**

An arrest without warrant, except as authorized by statute, is illegal.

**3. Criminal Law § 84—   evidence unlawfully seized — admissibility**

Evidence seized from a defendant by unlawful search in violation of his Fourth Amendment rights is excluded from evidence in a criminal trial.

**4. Searches and Seizures § 1—   search without warrant — justification — burden of proof**

One who seeks to justify a warrantless search has the burden of showing that the exigencies of the situation made search without a warrant imperative.

**5. Arrest and Bail § 3—   arrest without warrant — presence of officer**

An arrest for a misdemeanor cannot be made without a warrant unless the misdemeanor is committed in the presence of the officer.

**6. Arrest and Bail § 3;   Searches and Seizures § 1;   Criminal Law § 84—   arrest without warrant — occupying motel room for immoral purpose — seizure of coins**

Defendant's overnight occupancy of a motel room with his girl friend did not justify police officer's uninvited entry into the room to arrest the defendant without a warrant on a charge that the offense of occupying a motel room for immoral purposes had been committed in the presence · of the officer; consequently, the arrest of defendant and the seizure of coins from the motel room were unlawful.

**7. Criminal Law § 75—   confession following illegal arrest — admissibility**

A confession following an illegal arrest is not *ipso facto* involuntary and inadmissible, but the circumstances surrounding such an arrest and the in-custody statement should be considered in determining whether the statement is voluntary and admissible.

**8. Criminal Law § 76—   admission of confession — effect of subsequent evidence**

A ruling correctly admitting a confession in evidence should not be disturbed by evidence subsequently admitted on the trial unless (1) it is shown that the evidence could not have been offered on *voir dire* and (2) the subsequently admitted evidence compellingly and conclusively demonstrates that the confession was involuntary.

STATE *v.* McCLOUD

**9. Criminal Law §§ 76, 175—— voluntariness of confession —— scope of appellate review**

The Supreme Court must consider the entire record to determine whether a confession was in fact voluntary.

**10. Criminal Law § 75—— voluntariness of confession**

Voluntariness remains the test of the admissibility of a confession.

**11. Criminal Law § 75—— confession triggered by illegally seized evidence —— admissibility**

Defendant's argument that his confession to police officers was involuntary in that the confession was triggered by the identification of stolen coins that had been illegally seized from defendant's motel room, the identification being made by the owner of the coins in the presence of defendant and the police officers, *held* without merit.

**12. Searches and Seizures § 1—— search of motor vehicle —— prerequisites**

Search of a motor vehicle made in connection with a lawful arrest for a traffic violation is lawful when it is a contemporaneous search for the purpose of finding property, the possession of which is a crime; such search must be based on a belief reasonably arising from the circumstances that the motor vehicle contained the contraband or other property lawfully subject to seizure.

**13. Searches and Seizures § 1—— seizure without warrant —— contraband —— burglary tools**

Seizure of contraband, such as burglary tools, does not require a warrant when its presence is fully disclosed without necessity of search.

**14. Searches and Seizures § 1; Criminal Law § 84—— search of car without warrant —— seizure of burglary tools**

The warrantless seizure of burglary tools and other articles from the car in which defendant was riding as a passenger was lawful, and these tools and articles were properly admitted in the trial of defendant for possession of burglary tools, where (1) the driver had been stopped and placed under arrest for running a red light, (2) the arresting officer observed the burglary tools lying on the floorboard of the car and charged the driver with possession thereof, and (3) the other articles were thereafter discovered in the glove compartment.

**15. Arrest and Bail § 3; Constitutional Law § 30—— arrest without warrant —— the magistrate**

The fact that defendant was not immediately taken before a magistrate following his arrest on a Friday but instead was served with warrants for all charges against him except for a safecracking charge, and that the defendant was served with the safecracking warrant on Monday, *held* not to affect the validity of his trial. G.S. 15-46, G.S. 15-47.

**16. Arrest and Bail § 9—— purpose of bail**

The purpose of bail is to assure the presence of the defendant at trial.

**17. Arrest and Bail § 9—   amount of bail — prejudice**

Defendant who was placed under $25,000 bond on a charge of possession of burglary tools and under $25,000 bond on the charge of breaking and entering, larceny, and receiving failed to show that he was prejudiced by the large amount of bail.

**18. Burglary and Unlawful Breakings § 9—   possession of burglary tools — burden of proof**

In a prosecution for possession of burglary tools, the burden is on the State to show that the person charged had in his possession implements of housebreaking as defined by G.S. 14-55 and that such possession was without lawful excuse.

**19. Burglary and Unlawful Breakings § 10—   possession of burglary tools — burden of proof — instructions**

In a prosecution for the possession of burglary tools, trial court committed prejudicial error in instructing the jury that defendant had the burden of proving lawful excuse.

SHARP, J., dissenting.

BOBBITT, C.J., joins in dissenting opinion.

APPEAL by defendant from decision of the Court of Appeals reported in 7 N.C. App. 132.

Defendant was tried upon bills of indictment charging him with (1) possession of burglary tools, (2) safecracking, and (3) breaking and entering, larceny and receiving stolen property. The cases were consolidated for trial and defendant entered pleas of not guilty to all charges.

On the morning of 28 March 1969, it was discovered that the Flordia Street Baptist Church, Inc., of Greensboro, had been entered, doors broken open, and a safe door torn open. Cash in an amount between $48.00 and $60.00 had been taken from the safe, including a roll of coins upon which was stamped "Florida Street Baptist Church." On the same morning, at about 3:25 o'clock, Officers Hightower and Cooper attempted to stop an automobile occupied by two men for a routine check, whereupon the automobile rapidly increased speed and ran a red light. The officers pursued the automobile, which suddenly decreased speed, and the man on the passenger side jumped out, dropping a bundle as he ran. Officer Hightower vainly attempted to catch the fleeing man (he was later unable to identify this person as being the defendant McCloud). Officer Hightower then returned to the place where the pursued automobile had stopped, and found the driver of the car, Jack Jordan, in the custody of Officer Cooper on a charge of running a red light. It was established that Jordan

was the owner of the automobile. Officer Hightower looked into the Jordan automobile and observed on the floorboard two metal flashlights, a metal pry bar, a .22 caliber pistol, a small crowbar, a 13-inch screwdriver, and a pair of brown cloth work gloves. He thereupon advised Jordan that he was under arrest for the possession of burglary tools and carrying a concealed weapon, in addition to the charge of running a red light. Officer Hightower then looked in the glove compartment of the automobile and found an envelope containing $47.60, including a roll of coins wrapped in a blue container bearing the stamp "Florida Street Baptist Church." The glove compartment also contained a punch, a chisel, and a partially filled bottle of vodka. Officer Hightower then went to the area where he saw the fleeing passenger drop a bundle and found a gray metal box containing two punches, a chisel, tin snips, a brace and bit, and other items.

At the trial the money and the tools found in Jordan's automobile and near the scene were offered in evidence.

On 28 March 1969, defendant was served with warrants charging possession of burglary tools, breaking and entering and larceny, and occupying a room for immoral purposes. The record is vague as to the amount of bond set for defendant at that time. However, the Statement of Case on Appeal shows that he was placed under bond of $25,000 for possession of burglary tools and bond of $25,000 on the charge of breaking and entering, larceny and receiving. The record is again vague as to the bond set by the District Court when defendant waived hearing. However, the only amount appearing in the record is $5,000.

The State offered Detective Eli Welch as a witness. He testified that he first saw defendant at the Holiday Inn South on the morning of 28 March 1969. During his examination by the Solicitor this witness was questioned about conversations with defendant. Upon defendant's objection and motion to suppress, the court conducted a *voir dire* hearing in the absence of the jury.

On *voir dire*, Officer Welch testified that he first saw defendant about 7:00 o'clock a.m. on Friday, 28 March 1969. Defendant had been arrested by Sgt. Whitesell and Officer Bostic for occupying a room for immoral purposes. The witness talked with defendant for about thirty minutes around 11 o'clock a.m., on the same day, in the interrogation room at police headquarters. At that time defendant was advised "of his rights" and was told that Jordan was under arrest on charges of breaking and entering and that the police were at that time getting warrants to serve on defendant for similar charges. Defendant denied that he had any part in any of these

offenses. Officer Welch next saw defendant in the interrogation room on Monday, 31 March 1969. Referring to that occasion, the witness testified:

> "The first thing I did was I advised him of his rights. I told him he didn't have to say anything. I told him anything he told us could be used against him in court. I told him if he couldn't afford an attorney the State would appoint him an attorney. I told him if he wanted one present at that time that would be arranged also. I told him any question I asked him he didn't have to answer if he didn't want to answer. I asked him if he understood his rights and he said he did."

On the same morning Jordan was brought into the room and he told defendant: "I told them the truth, you might as well tell them the truth." Later, defendant told the police officers that if Mr. Hill (a resident of Virginia who had lost certain coins as a result of his home being burglarized) could identify certain coins taken from his motel room by the officers at the time of his arrest, he would tell the officers anything they wanted to know. Mr. Hill was brought to the room and he identified the coins. Thereupon defendant stated that he and Jordan went to Florida Street Baptist Church and entered it through an unlocked window, broke in some doors inside the church, went into the safe and took approximately $50 from the safe. He stated that he was the person who jumped from Jordan's car and ran. On the next day defendant was taken to District Court of Guilford County for preliminary hearing on the felony charges, and at that time he waived preliminary hearing. The misdemeanor charge was nol prossed. Following the preliminary hearing, defendant, for the first time, told the officers that he wanted an attorney. On the same day, after the court found that defendant was an indigent person, Mr. Forrest E. Campbell of the Guilford Bar was appointed by the Court to represent defendant.

Officer Zimmerman also testified that defendant made inculpatory statements to him concerning the felony charges on the morning of 31 March 1969, after he had again advised him "of his rights." Officer Melton's testimony on *voir dire* tended to corroborate other officers. Defendant offered no evidence on *voir dire*. At the conclusion of the *voir dire* the court found:

> "The court finds as a fact that prior to making any statement involving these cases on trial the defendant was properly warned of his constitutional rights as required by the *Miranda* decision of the United States Supreme Court; and that he was advised that he did not have to make any statements concern-

ing the offenses charged against him; and that any statements made by him could be used against him in a court of law; that he had the right to have an attorney present if he so desired while being questioned; that if he did not have funds to employ an attorney one would be appointed for him, if he requested one; that he had the right to refuse to answer any questions asked him.

"Further, the court finds as a fact that the defendant freely understandingly and voluntarily made the various statements concerning the offenses charged against him after being properly warned of his constitutional rights.

"Further, the court finds as a fact that there was no duress, promise or hope of reward offered, or threats against the defendant to induce him to make any statements he made pursuant to interrogation by the officers."

The court denied defendant's motion and objection concerning the alleged confession, and the jury returned to the courtroom. Officers Welch, Melton and Zimmerman then testified before the jury as to the inculpatory statements made by defendant.

Defendant testified in his own behalf. He admitted occupying the motel room with his girl friend and stated that on the night he was arrested he, Jordan and two girls had gone to a wrestling match and returned to the motel at 10 or 11 o'clock p.m. He and his date went to one room, Jordan and his to another. Defendant stated that he and his girl friend watched television until they went to bed. He said: "And the next thing I know it was around 5:00 in the morning and I heard banging on the door." He opened the door and saw two policemen standing there.

Following are excerpts of defendant's further testimony:

"And one of them (the officers) went around in the room and started digging in my personal property back there. The other one was talking to me inside the door and he asked me when was the last time I seen Jordan. And I told him the night before when I left him at the door to the room. And the man said, 'I think you're lying.' and I chased them out and told them to get out of the house because they had no warrant. They went out and the car stayed there because I heard the motor running. They were gone about twenty minutes and come back and were beating on the door again, and this time they got another police officer with them. I believe it is Bostick . . . ."

"Mr. Bostick just shoved his way in the house and said, 'Get your shoes on; you're going to jail.' And I said, 'For what.' . . . and I said, 'Do you have a warrant to take me to jail.' I asked him if he had a warrant to search my property and he didn't nothing — he done it.

". . . Following my arrest they took me to jail from there at the motel. I hadn't been served with a warrant until after I got in jail.

. . . .

". . . Mr. Welch started to warn me of my rights, and he never got through it because we got in an argument, and he never finished warning me. I did not sign a confession to these crimes, and I didn't make none. . . . I never did make one."

On cross-examination defendant admitted that he had been convicted of burglary, possession of burglary tools, and vagrancy, and that he was under indictment in South Carolina for safecracking.

The jury returned a verdict of guilty on each of the charges. The trial judge imposed sentence of 10 years on the charge of possession of burglary tools, 10 years on the charge of breaking and entering, 10 years on the charge of larceny, and not less than 25 nor more than 40 years for safecracking, all sentences to run concurrently. Defendant appealed to the North Carolina Court of Appeals. The Court of Appeals found no error as to the charges of safecracking, breaking and entering and larceny, but ordered a new trial as to the charge of possession of burglary tools. Defendant appealed to this Court, pursuant to G.S. 7A-30(1).

*Attorney General Morgan and Staff Attorney Denson for the State.*

*Forrest E. Campbell for defendant.*

BRANCH, J.

Defendant assigns as error the admission of testimony by police officers concerning his alleged in-custody confession.

**[1]** Upon defendant's objection to the testimony concerning his alleged confession, the trial court properly followed the procedure approved by this Court and the United States Supreme Court. *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1; *Jackson v. Denno,* 378 U.S. 368, 12 L. Ed. 2d 908. There was ample evidence to support the findings of fact, and the findings of fact, in turn, supported the conclusion (denominated a finding) that defendant "freely, understandingly and voluntarily" made the various statements. Defendant offered no

evidence on *voir dire* and the State offered no evidence on *voir dire* tending to establish an illegal arrest or an illegal search and seizure.

At the conclusion of the *voir dire* the trial judge correctly admitted the alleged confession into evidence before the jury. *State v. Barnes*, 264 N.C. 517, 142 S.E. 2d 344, and *State v. Gray, supra.* The State offered no evidence before the jury tending to establish an illegal arrest or an illegal search and seizure. However, defendant, testifying in his own behalf before the jury, gave evidence concerning his arrest and the seizure of certain coins from his motel room at the time of his arrest. Based upon this testimony, defendant now argues that his confession was involuntary because it was the product of an illegal arrest and an illegal search and seizure.

[2]　An arrest without warrant, except as authorized by statute, is illegal. *State v. Mobley*, 240 N.C. 476, 83 S.E. 2d 100.

G.S. 15-41, in part, provides:

> (1)　When the person to be arrested has committed a felony or misdemeanor in the presence of the officer, or when the officer has reasonable ground to believe that the person to be arrested has committed a felony or misdemeanor in his presence;"

[3, 4]　Further, any evidence seized from a defendant by unlawful search in violation of his Fourth Amendment rights is excluded from evidence in a criminal trial. Such unlawful search is not made lawful because of resulting discoveries. *Weeks v. United States*, 232 U.S. 383, 58 L. Ed. 652; *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081. Fruits of such evidence are excluded as well. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 64 L. Ed. 319. And one who seeks to justify a warrantless search has the burden of showing that the exigencies of the situation made search without a warrant imperative. *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 685; *United States v. Jeffers*, 342 U.S. 48, 96 L. Ed. 59; *McDonald v. United States*, 335 U.S. 451, 93 L. Ed. 153.

Our research reveals no North Carolina cases in point concerning arrests for minor immoral offenses in which the officers entered premises occupied by defendant to make an arrest without warrant, on the ground that the offense was committed in the presence of the officer. However, other jurisdictions have reached the conclusion, under circumstances similar to those here related, that the offense was not committed in the presence of the officer.

In the case of *Hart v. State*, 195 Ind. 384, 145 N.E. 492, which was a prosecution for shooting a police officer who was standing outside the defendant's room when other officers broke into his room

without a warrant and found a woman asleep in the defendant's bed, the Indiana Court reversed conviction for assault on the police officer on the basis that no misdemeanor was committed "in view of the police officers" and the officers therefore had no authority to break into and search private rooms without a warrant. Accord: *Adair v. Williams,* 24 Ariz. 422, 210 P. 853; *Goodwin v. Allen,* 83 Ga. App. 615, 64 S.E. 2d 212.

[5, 6]   It would seem that unless the misdemeanor is committed in the presence of the officer in the sense that at the time of its commission through his sensory perception he might know that a misdemeanor is being committed in his presence or have reasonable ground to believe that a misdemeanor has been committed in his presence, that an arrest cannot be made without warrant. The record before us fails to show facts which would justify uninvited entry into defendant's room to make an arrest for a misdemeanor without a warrant, on the ground that the officer had reasonable ground to believe the person committed a misdemeanor in his presence. Defendant's arrest was illegal. Neither did the State justify the warrantless search by showing that the circumstances made search without a proper warrant imperative. Thus the coins taken from the motel room were unlawfully seized.

[7]   The rule in North Carolina is that a confession following an illegal arrest is not *ipso facto* involuntary and inadmissible, but the circumstances surrounding such an arrest and the in-custody statement should be considered in determining whether the statement is voluntary and admissible. *State v. Moore,* 275 N.C. 141, 166 S.E. 2d 53.

It has long been the rule in this jurisdiction that the admissibility of a confession is determined by the facts appearing in evidence when it is received or rejected, and not by facts appearing in evidence at a later stage in the trial. *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572. However, defendant points to the line of cases represented by *Blackburn v. Alabama,* 361 U.S. 199, 4 L. Ed. 2d 242, and *Davis v. North Carolina,* 384 U.S. 737, 16 L. Ed. 2d 895, as altering this rule.

In the case of *Davis v. North Carolina, supra,* the petitioner was a Negro of low mentality who was kept in a detention cell for sixteen days, where he spoke to no one but the police and was subjected to daily, intermittent interrogation. There was no evidence that he was advised of his "constitutional rights." A purported confession by petitioner was offered into evidence over petitioner's objection, and the court heard conflicting evidence on the issue and ruled the

confession to be voluntary and admissible. Holding the confession to be involuntary, the United States Supreme Court stated:

> "It is our duty in this case, however, as in all of our prior cases dealing with the question whether a confession was involuntarily given, to examine the *entire record* and make an independent determination of the ultimate issue of voluntariness. E. g., *Haynes v. Washington,* 373 U.S. 503, 515-516, 10 L ed 2d 513, 521, 522, 83 S Ct 1336 (1963); *Blackburn v. Alabama,* 361 U.S. 199, 205, 4 L Ed 2d 242, 247, 80 S Ct 274 (1960); *Ashcraft v. Tennessee,* 322 U.S. 143, 147-148, 88 L ed 1192, 1195, 1196, 64 S Ct 921 (1944). Wholly apart from the disputed facts, a statement of the case from facts established in the record, in our view, leads plainly to the conclusion that the confessions were the product of a will overborne." (Emphasis added)

In *Blackburn v. Alabama, supra,* petitioner was arrested on a charge of robbery during an unauthorized absence from a veterans' hospital where he had been classified as one hundred percent mentally incompetent. He had previously been discharged from the army because of permanent mental disability. He signed a confession written by a deputy sheriff after eight or nine hours of sustained interrogation. Shortly thereafter he was committed to a State hospital after a finding of insanity. However, four years later he was declared competent to stand trial. Upon his trial in an Alabama State Court, his confession was admitted into evidence over objection, after a *voir dire* hearing by the court. Important evidence concerning the involuntariness of the confession was not introduced until after admission of the confession into evidence, and defendant's counsel did not later request reconsideration of that ruling. Holding that the use of this confession violated defendant's constitutional rights, the United States Supreme Court said:

> "We take note also of respondent's argument that our decision must be predicated solely upon the evidence introduced by defendant before admission of the confession . . . It is quite true that Blackburn's counsel, so far as the record shows, made no request that the judge reconsider his ruling on the basis of this additional data.
>
> ". . . (W)e reject the notion that the scope of our review can be thus restricted. Where the involuntariness of a confession is *conclusively* demonstrated at any stage of a trial, the defendant is deprived of due process by entry of judgment of conviction without exclusion of the confession." (Emphasis added)

At this point we think it proper to consider and distinguish instant case from the case of *State v. Hall,* 264 N.C. 559, 142 S.E. 2d 177. In *Hall* the State offered in evidence articles obtained from defendant's home without a search warrant while the defendant was in jail. The search was made with consent of defendant's wife. Defendant was confronted with the articles and he thereupon admitted that he stole the property. The facts do not show whether a *voir dire* hearing was held to determine admissibility of the confession at the first trial. This Court, in holding that the property was unlawfully obtained and improperly admitted into evidence, said:

". . . However, the confession which led to its recovery was not made until the officers confronted the defendant in jail with the clock and radio which they had obtained as a result of a search which had violated his rights. At the next trial the court may determine whether the confession was actually free and voluntary or whether it was triggered by the use the officers made of the fruits of their illegal search to such an extent as to render it inadmissible in evidence."

*State v. Hall, supra,* differs from instant case in that a new trial was ordered because property obtained by illegal search was *introduced into evidence.* The dictum in *Hall* directed the trial court, at the next trial, to determine whether the confession was triggered by the use of the property unlawfully seized, without indicating whether a *voir dire* hearing had been conducted in the original trial. Here, the property taken by police officers was not offered in evidence. A *voir dire* hearing was held and at that time defendant chose not to give the court the benefit of his contentions as to an illegal arrest or an illegal search and seizure. When the trial judge held the *voir dire* hearing to determine the admissibility of the alleged confession, defendant could have, without injury to his cause, presented his contentions as to the effect of his arrest and the effect of the seizure of the coins from his motel room. It should be noted that defendant did not offer the evidence upon which he relies to invalidate the confession until the third day of the trial. The evidence was offered before the jury by defendant's own testimony. Had the court found that this later introduced evidence compelled a finding that the confession was involuntary, it would have been proper to have declared a mistrial. We do not intimate that procedural matters should take precedence over constitutional rights; neither can we lightly condone a procedure which, without good cause, obstructs and delays the administration of justice.

**[8]** We recognize that when a confession is correctly admitted and it is later conclusively demonstrated that defendant's confession was involuntary, the court should not allow judgment to be entered. *Blackburn v. Alabama, supra.* However, orderly administration of justice demands that this rule be carefully applied so that planned, piecemeal defenses do not destroy certainty of punishment by causing the criminal courts to deteriorate into an endless series of *voir dire* hearings and mistrials. We hold that a ruling correctly admitting a confession into evidence should not be disturbed unless (1) it be shown that the evidence could not have been offered on *voir dire,* and (2) unless the later introduced evidence compellingly and conclusively demonstrates it to be involuntary.

**[9]** The rationale of *Blackburn v. Alabama, supra,* and *Davis v. North Carolina, supra,* dictates that we consider the entire record to determine whether the confession was in fact voluntary.

**[10, 11]** Defendant's most compelling argument is that the use of the illegally seized coins triggered his confession. In considering this contention it must be borne in mind that voluntariness remains the test of admissibility of a confession, and the use of the illegally seized property is only one circumstance surrounding the in-custody statement to be considered in determining whether the statement is voluntary and admissible. *State v. Moore, supra.* In instant case, other circumstances to be weighed in determining the admissibility of the confession include the failure of the record to show that: (1) defendant was mentally defective, (2) there was sustained interrogation or promise of reward resulting in a confession, (3) there were threats or coercive acts by the police accompanying or following the arrest, (4) defendant was held incommunicado, or (5) officers failed to promptly and fully warn him of his constitutional rights.

Here, the record discloses a knowledgeable person, a veteran of many trials and encounters with the police, who "ordered" the police officers from his motel room when they entered and who, while in custody, engaged in an "argument" with a police officer to the extent that the officer was allegedly unable to complete warning defendant of his constitutional rights. In fact, by his own sworn testimony defendant never made the confession which he now attacks as being involuntary. Thus the record presents a picture which is a far cry from the circumstances in *Blackburn v. Alabama, supra,* where the defendant, who had been discharged from the Army because of permanent mental disability, confessed after being subjected to eight or nine hours of sustained interrogation, and is entirely different from the situation in *Davis v. North Carolina, supra,* where the defend-

ant, a person of low mentality, confessed after being confined in a detention cell for sixteen days, where he spoke to no one but the police, who interrogated him daily. We do not think the entire record conclusively demonstrates that the confession was the "fruit" of the illegally seized coins, or that the confession was the product of a "will overborne." The Court of Appeals correctly overruled this assignment of error.

Defendant assigns as error the admission into evidence of the tools and other exhibits taken from the Jordan automobile.

The admission of defendant's confession destroys his contention that the evidence does not connect him with the exhibits offered in evidence. Thus the basic question presented by this assignment of error is whether the tools and exhibits were obtained by an unlawful search and seizure.

[12]    Search of a motor vehicle made in connection with a lawful arrest for a traffic violation is lawful when it is a contemporaneous search for the purpose of finding property, the possession of which is a crime, i.e., burglary tools. Such search must be based on a belief reasonably arising from the circumstances that the motor vehicle contained the contraband or other property lawfully subject to seizure. *State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741; *People v. Lopez,* 60 Cal. 2d 223, 384 P. 2d 16; *State v. Boykins,* 50 N.J. 73, 232 A. 2d 141; *Welch v. U. S.,* 361 F. 2d 214.

[13]    Seizure of contraband, such as burglary tools, does not require a warrant when its presence is fully disclosed without necessity of search. *State v. Giles,* 254 N.C. 499, 119 S.E. 2d 394; *State v. Bell, supra; Goodwin v. U. S.,* 347 F. 2d 793; *U. S. v. Owens,* 346 F. 2d 329; *State v. Durham,* 367 S.W. 2d 619. See also 10 A.L.R. 3rd 314, for a full note and collection of cases concerning lawfulness of search of a motor vehicle following arrest for traffic violation.

[14]    In the instant case the owner of the automobile was lawfully under arrest. The arrest was accompanied by the extraordinary behavior of the passenger fleeing upon approach of the officers. After the driver's arrest, the contraband articles were observed, without necessity of search, lying on the floorboard of the automobile. Upon observing these articles, defendant was further charged with unlawful possession of burglary tools. Thereupon the officers immediately conducted further search and found other articles in the glove compartment. The further search was clearly based upon a belief reasonably arising from the circumstances that the motor vehicle contained other property subject to lawful seizure.

We note that the Court of Appeals questions the standing of defendant to raise objection to the search of Jordan's automobile, on the basis that defendant had no property right in the place alleged to have been invaded. We agree with the Court of Appeals that it is not necessary to decide this question since the search without warrant was legal. However, it should be noted that the long-recognized property right concept in relation to search and seizure has been greatly eroded by recent Federal decisions. *Jones v. U. S.,* 362 U.S. 257, 4 L. Ed. 2d 697; *Katz v. U. S.,* 389 U.S. 347, 19 L. Ed. 2d 576; *Mancusi v. DeForte,* 392 U.S. 364, 20 L. Ed. 2d 1154; *Bumper v. State of North Carolina,* 391 U.S. 543, 20 L. Ed. 2d 797.

[15] Defendant next contends that the police officers failed to immediately take him before a magistrate and failed to allow him reasonable bail, thereby violating the provisions of G.S. 15-46, G.S. 15-47, Article I, §§ 14, 17 and 18 of the North Carolina Constitution.

G.S. 15-46 provides:

"Every person arrested without warrant shall be either immediately taken before some magistrate having jurisdiction to issue a warrant in the case, or else committed to the county prison, and, as soon as may be, taken before such magistrate, who, on proper proof, shall issue a warrant and thereon proceed to act as may be required by law."

G.S. 15-47 provides:

"Upon the arrest, detention, or deprivation of the liberties of any person by an officer in this State, with or without warrant, it shall be the duty of the officer making the arrest to immediately inform the person arrested of the charge against him, and it shall further be the duty of the officer making said arrest, except in capital cases, to have bail fixed in a reasonable sum, and the person so arrested shall be permitted to give bail bond; and it shall be the duty of the officer making the arrest to permit the person so arrested to communicate with counsel and friends immediately, and the right of such persons to communicate with counsel and friends shall not be denied. Provided that in no event shall the prisoner be kept in custody for a longer period than twelve hours without a warrant."

The failure to observe the provisions of these statutes may well result in the violation of a person's constitutional rights. However, G.S. 15-46 and G.S. 15-47 do not prescribe mandatory procedures affecting the validity of a trial. *State v. Broome,* 269 N.C. 661, 153 S.E. 2d 384; *Carroll v. Turner,* 262 F. Supp. 486 (E.D.N.C. 1966).

It is true that defendant was not immediately carried before a magistrate. On the day of his arrest (Friday, 28 March 1969) defendant was informed of charges against him and warrants were served on him for all charges except for the charge of safecracking. On the following Monday he was informed of and served with warrant for the charge of safecracking. There is nothing in the record to indicate that defendant was not given the opportunity to communicate with counsel and friends immediately.

[16, 17]    It is also true that bail was set in a large amount. The purpose of bail is to assure the presence of the defendant at trial. *Stack v. Boyle,* 342 U.S. 1, 96 L. Ed. 3. The record does not clearly reveal what facts might have influenced the amount of the bond. However, the record is certain that defendant made no motion to reduce bond or exercise his remedy of habeas corpus. Defendant did not contend or offer evidence to show that he was prejudiced because of delay in his preliminary hearing, by fixing of bail, or by failure of police officers to immediately take him before a magistrate. Nor does the record support his present contention that he was thereby deprived of his constitutional rights.

The Court of Appeals correctly held that the trial judge erred in charging:

"Now, when a person is charged with possession of implements of housebreaking, the burden of proving lawful excuse is on the person so charged. That burden is discharged by the accused if he proves that the alleged implement of housebreaking, or capable of being used for that purpose, is a tool used by him in his trade or business."

[18, 19]    In a prosecution for possession of burglary tools, the burden is on the State to show that the person charged had in his possession implements of housebreaking enumerated or coming within the meaning of G.S. 14-55, and that such possession was without lawful excuse. *State v. Godwin,* 269 N.C. 263, 152 S.E. 2d 152. The trial judge incorrectly placed this burden upon defendant.

Defendant's other assignments of error were correctly decided by the Court of Appeals and do not justify further discussion.

The judgment of the Court of Appeals affirming the cases for safecracking, breaking and entering and larceny, and ordering a new trial in the case for possession of burglary tools, is

Affirmed.

SHARP, J., dissenting:

The majority opinion makes it quite clear that defendant's arrest upon the charge of occupying a room for immoral purposes and the search of his motel room were illegal. During the unlawful search the officers found the coins which had been stolen in Virginia from the home of Mr. Hill. These coins were not offered in evidence. The record clearly shows, however, that defendant's confession was obtained by Mr. Hill's identification of his coins in defendant's presence.

Evidence obtained by unlawful search and seizure is not excluded because it is inherently unreliable but because its exclusion is deemed the most effective means of enforcing constitutional guarantees against unreasonable searches and seizures. *Jones v. United States,* 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725. Had the coins been offered in evidence they would have been excluded because illegally obtained. G.S. 15-27; G.S. 15-27.1; *State v. Mills,* 246 N.C. 237, 98 S.E. 2d 329; *Mapp v. Ohio,* 367 U.S. 643; 6 L. Ed. 2d 1081, 81 S. Ct. 1684. It follows, therefore, that a confession obtained by their use is equally inadmissible. To hold otherwise would emasculate the rule of exclusion. In *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 64 L. Ed. 319, 40 S. Ct. 182, 24 A.L.R. 1426, Mr. Justice Holmes, with reference to information obtained during an unlawful search, said: "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all."

We hold that incriminating articles obtained in consequence of an illegally obtained confession are inadmissible in evidence. *State v. Mitchell,* 270 N.C. 753, 155 S.E. 2d 96. The reverse of the rule is equally true. *State v. Hall,* 264 N.C. 559, 142 S.E. 2d 177; *People v. Stoner,* 55 Cal. Rptr. 897, 422 P. 2d 585; *Commonwealth v. Spofford,* 343 Mass. 703, 180 N.E. 2d 673; *People v. Rodriguez,* 11 N.Y. 2d 279, 183 N.E. 2d 651. See *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.

In *People v. Rodriguez, supra,* defendant confessed after being confronted with articles obtained in an illegal search. In granting defendant a new trial because his motion to suppress the confession had been denied, the Court of Appeals of New York said: "[T]he exclusionary rule covers not only the evidence illegally obtained, but the product of the unlawful search as well. The underlying rationale is that government may not violate the constitutional guarantee (U. S. Const., 4th Amdt.) and 'use the fruits of such unlawful conduct to secure a conviction.' . . . And, obviously, it matters

not that these 'fruits' happen to be confessions rather than some other type of evidence." (Citations omitted.)

As the majority opinion points out, evidence "concerning the involuntariness of the confession" was not introduced until after the confession was admitted into evidence, and "defendant did not offer the evidence upon which he relies to invalidate the ·confession until the third day of the trial." The orderly administration of justice is not furthered by such procedure. Counsel for defendant was remiss in not offering upon the *voir dire* the evidence he offered on the third day of the trial. However, the original remissness was that of the State. Upon defendant's objection to the confession testimony the burden devolved upon the State to show, *inter alia*, that the search by which the officers obtained the coins which triggered the confession was legal. *Bumper v. North Carolina*, 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788; *State v. Little*, 270 N.C. 234, 154 S.E. 2d 61. This it could not do. Indeed, the State offered no evidence attempting to establish the legality of the search. In view of this omission, the judge committed error in admitting the evidence of defendant's confession.

It is no longer the rule that a confession is presumed to be voluntary and the burden is on a defendant to show the contrary. The burden of showing the voluntariness of a confession is now upon the State. *State v. Thorpe*, 274 N.C. 457, 164 S.E. 2d 171; *State v. Vickers*, 274 N.C.· 311, 163 S.E. 2d 481; *State v. Pike*, 273 N.C. 102, 159 S.E. 2d 334; *State v. Ross*, 269 N.C. 739, 153 S.E. 2d 469. Now, in order to be admissible, a confession must be voluntary in two aspects: (1) It must be made of a defendant's own free will, without coercion induced by fear, threat of harm, promise of reward or leniency; and (2) it must not be influenced by methods which violate the constitutional rights of the accused. *See* 29 Am. Jur. 2d *Evidence* §§ 526, 542, 555, 557, where the cases are collected. Thus, a confession obtained in consequence of a violation of a defendant's constitutional rights is deemed involuntary.

It appears from the State's evidence that defendant's confession was obtained by the exhibition and identification of the coins which the officers had seized while unlawfully arresting him and unlawfully searching his motel room. His confession therefore cannot be held voluntary. In my view defendant is also entitled to a new trial on the charges of safecracking, breaking and entering, and larceny.

BOBBITT, C.J., joins in this dissenting opinion.