**UNITED STATES of America,**
Plaintiff-Appellee,

v.

**Robert OWENS, Eugene Howell, Joseph Lyle and Zenobia Owens, a/k/a Zenobia McKinley, Defendants-Appellants.**

No. 14681.

United States Court of Appeals
Seventh Circuit.

June 2, 1965.

Rehearing Denied June 29, 1965.

**330**

Stephen Love, Ellis E. Reid, George N. Leighton, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Gerald M. Werksman, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, John Powers Crowley, Asst. U. S. Attys., of counsel, for appellee.

Before KNOCH, CASTLE and KILEY, Circuit Judges.

KILEY, Circuit Judge.

Defendants appeal from their convictions, by a jury, of narcotics laws violations: Lyle under two substantive counts,[1] and all under a conspiracy count.[2] We affirm.

■ Defendants contend that the evidence was not sufficient to sustain the verdicts finding them members in, and guilty of, the general conspiracy charged in the indictment. On this contention we must view the evidence and draw the inferences therefrom in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1941); United States v. Iacullo, 226 F.2d 788, 795 (7th Cir. 1955), cert. denied 350 U.S. 966, 76 S.Ct. 435, 100 L.Ed. 839 (1956).

There is ample evidence from which the jury could infer that Eugene Howell and Robert Owens were at the top of a heroin hierarchy and that the narcotics passed from them down through "Red" Thomas and Joseph Lyle—all aided by Zenobia Owens—to the addicts at the base, and that they all knowingly joined in the unlawful conspiracy charged in the indictment. That the members had varied duties does not change the fact that they all acted in furtherance of the same conspiracy. United States v. Micele, 327 F.2d 222, 225 (7th Cir. 1964); United States v. Wenzel, 311 F. 2d 164 (4th Cir. 1962); Poliafico v. United States, 237 F.2d 97 (6th Cir. 1956), cert. denied 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597 (1957).

There is evidence that Marvin Moses in looking for a source of narcotics was introduced by Owens to "Red" Thomas; that when Moses called the number given him by Thomas, Zenobia Owens would take the messages for Thomas; that Thomas sold narcotics to Moses; that Zenobia Owens, at least once, picked up

---

1. Charging a sale of heroin to a federal narcotics agent in violation of 26 U.S.C. § 4705(a) and fraudulently and knowingly receiving, concealing and facilitating the transportation and concealment, after unlawful importation, of a quantity of heroin, knowing it to have been unlawfully imported into the United States, in violation of 21 U.S.C. § 174.

2. Charging conspiracy to violate 21 U.S.C. § 174.

money for Thomas at the place where the money and narcotics were customarily exchanged; that Moses later became an informer and introduced Agent Gibson to Thomas, who sold Gibson heroin; that Howell and Owens were arrested together on the Pennsylvania Turnpike and Howell was found in possession of narcotics; that Howell admitted to the Pennsylvania police that he was returning from a trip to New York to obtain narcotics; that following the arrests Thomas told Moses he could not do anything for him then because "his men" had been arrested in Pennsylvania; and that Thomas later told Gibson that "his people * * * had gotten popped" on the Turnpike but that the stuff that was found did not belong to "his man, Robert."

There is evidence also that Lyle sold a small sample of heroin to Agent Dayle and told him there would be a delay in supplying larger quantities because "my people" were arrested on the Pennsylvania Turnpike, but that he would have heroin in quantity for Dayle "as soon as they get back from Pennsylvania"; and that Lyle also said "they found the stuff on Gene."

The evidence is further that Moses brought together Dayle and Owens, who said his "partner" and he "got busted along the turnpike"; that Owens gave Dayle the same telephone number given to Gibson by Thomas; that Owens and Thomas were seen together in a night club and that Thomas, after making sales of narcotics, went to a house where he was let in by Owens; that Owens drove Lyle's car on several occasions; that Thomas gave Gibson a second telephone number to use; and that Owens was the owner of the building in which were located the two telephones involved in the transactions, one registered to Zenobia Owens and the other to Lily Starkey, who owned the car in which Owens and Howell were arrested.

We think this evidence was clearly sufficient to support the jury's verdict.

Defendants challenge the rulings of the district court in denying motions to suppress heroin seized from Howell by the Pennsylvania State Police following his arrest there and in refusing to suppress evidence seized from the residences of Howell and Zenobia Owens at the time of their arrests.

Howell was driving with Owens and one Hightower in a new Cadillac convertible on the Pennsylvania Turnpike when he was arrested for speeding. An on-the-spot interrogation disclosed the suspicious circumstance that the car was registered in the name of Lily Starkey, whom Howell said he did not know and from whom neither Owens nor Howell could show permission to drive the car. The Pennsylvania officer, suspecting that the car was stolen, questioned Owens about the contents of the trunk, which Owens opened, revealing three suitcases. Owens disclaimed ownership of one of the suitcases, which was unlocked, and when opened by the officer contained, in open view, a crude hypodermic needle of a type used by addicts. Searching further in the suitcase the officer found a burnt spoon with a bent handle, also an addict's tool, and a loaded revolver. A search of Howell at the police station disclosed in his shoe a package of nearly pure heroin.

It is clear from the facts in the record that the arrest for speeding was not "a mere excuse to search" for narcotics as in Taglavore v. United States, 291 F.2d 262, 265 (9th Cir. 1961), and that the arrest was valid under Pennsylvania law,[3] which controls that question. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); United States v. Viale, 312 F.2d 595, 599 (2d Cir.) cert. denied 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963). The surrounding circumstances justified the

---

3. The Pennsylvania state policeman clocked the speed of the car as being in excess of the 70 m. p. h speed limit of Title 75 Pennsylvania Statutes, Section 1002, and he made the arrest for speeding pursuant to his authority under Title 71 Pennsylvania Statutes, Section 252.

arresting officer in suspecting that he was dealing with a situation more serious than routine speeding and he had reasonable grounds for believing that the car might be stolen. There is nothing to indicate that the officer suspected the presence of any narcotics or other violation until the suitcase was opened, disclosing the needle. Considering the situation which faced the officer, his attempts to determine whether the car was stolen were not unreasonable or violative of the Fourth Amendment, and the evidence which was turned up was not the fruit of any "poisonous tree."

The arrests of Howell and Zenobia Owens in Chicago were concededly valid. The question is whether the district court erroneously ruled that the attendant searches were not unreasonable under the Fourth Amendment. Both Howell and Zenobia Owens were arrested on May 6, 1963. At Howell's home two books lying in open view were seized, each containing the second telephone number given to Gibson by "Red" Thomas, and the notation "Red." In the residence of Zenobia Owens a slip of paper bearing the same number and notation "Red" was found in her purse in the bedroom.

■■■ Defendants argue that the books and slip of paper were seized unlawfully in a general search "solely for evidence." There is no merit in the argument. The items were seized pursuant to a lawful arrest where the officers were looking for "Contraband, fruits of the crime," as the arresting officer testified. The items seized were closely related to the means of communication by telephone essential to the successful conduct of the conspiracy and fall within the class of instrumentalities of crime properly subject to seizure incident to arrest.[4] Harris v. United States, 331

U.S. 145, 67 S.Ct. 1098, 91 L.Ed.2d 1399 (1947); Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); United States v. Boyette, 299 F.2d 92 (4th Cir.), cert. denied sub nom. Mooring v. United States, 369 U.S. 844, 82 S.Ct. 875, 7 L.Ed. 2d 848 (1962).

■■■ Lyle was charged with selling heroin on February 15, 1963 to Agent Dennis Dayle, and with fraudulently and knowingly receiving, concealing and facilitating the transportation and concealment of unlawfully imported heroin on the same day. The evidence taken most favorably for the Government, United States v. Iacullo, 226 F.2d 788, 795 (7th Cir. 1955), substantially proves the offenses charged.

■■■ Lyle testified in support of his defense of entrapment that his friend and former attorney, who had become a Government informer, by persistent importuning arranged the meeting with Dayle. Dayle's testimony shows that Lyle readily agreed to the transaction and that he tried to impress Dayle with his connection with Owens and Howell, and spoke of doing business "in a million dollar way." In this testimony and that of Agent Cook, in rebuttal, of sales of narcotics by Lyle to him in April 1962, the jury had sufficient basis to find that Lyle was predisposed to the transaction and was not entrapped.

■■■ Defendants contend that Cook's testimony was improper and prejudicial to them since the testimony was of transactions unconnected with the charges in the indictment. The testimony was proper as an inquiry into Lyle's predisposition to commit the crime, Sorrells v.

---

4. "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody is not to be doubted." Harris v. United States, 331 U.S. 145, 151, 67 S.Ct. 1098, 1101 (1947), quoting Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925).

United States, 287 U.S. 435, 451, 53 S.Ct. 210, 77 L.Ed. 413 (1932), and the court's instructions to the jury properly limited the rebuttal testimony to Lyle's defense of entrapment. The other defendants, therefore, were not prejudiced.

The judgments are affirmed.