**Eugene HOWELL, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**Nos. 16980, 17745.**

United States Court of Appeals, Seventh Circuit.

April 29, 1971.

Rehearing Denied May 21, 1971.

Harvey M. Silets, Theodore A. Sinars, Chicago, Ill., for plaintiff-appellant; Harris, Burman & Silets, Chicago, Ill., of counsel.

William J. Bauer, U. S. Atty., Michael B. Cohen, Asst. U. S. Atty., Chicago, Ill., for defendant-appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Before SWYGERT, Chief Judge, CASTLE, Senior Circuit Judge, and PELL, Circuit Judge.

PELL, Circuit Judge.

Eugene Howell was named in one count of a five count indictment in the United States District Court for the Northern District of Illinois charging him, Robert Owens, Joseph Lyle, Morris Thomas and Zenovia Owens, with conspiracy to receive, conceal, buy, sell and facilitate the transportation and concealment of unlawfully imported heroin, a narcotic drug, in violation of 21 U.S.C. § 174.

Following Howell's not guilty plea, a jury trial was conducted before District Judge Walter J. LaBuy. The jury verdict, which was filed April 2, 1964, found Howell guilty as charged. Howell had been previously convicted of a violation of narcotics laws in the United States District Court for the Southern District of Texas in 1956, and as a second offender was sentenced to 12 years imprisonment. The conviction was affirmed on appeal to this court. United States v. Owens, 346 F.2d 329 (7th Cir. 1965), cert. den., 382 U.S. 878, 86 S.Ct. 163, 15 L.Ed.2d 119.

We now have before us a consolidated appeal from the denial of Howell's two separate motions under 28 U.S.C. § 2255. The first motion was denied by District Judge Bernard M. Decker, Howell v. United States, 282 F.Supp. 246 (N.D.Ill. 1968). The second motion was denied by District Judge Abraham L. Marovitz, Howell v. United States, 300 F.Supp. 1017 (N.D.Ill.1969).

On April 19, 1967 Howell filed his first motion alleging generally: (1) That he had been incompetent and unable to understand the charges against him or to assist in his own defense, since he had been under the influence of narcotics during the trial, sufficient facts being available to the court and government to require a competency hearing at that time; and (2) that the admission at trial of an allegedly inculpatory statement made by Howell to the Pennsylvania state police was in violation of his rights under the Fifth Amendment because the statement was not voluntarily made, but instead given under the pressure of promises by the police that he, Howell, would be given heroin he needed at that time if he would give the statement.

The hearing before Judge Decker, which was confined to the matter of incompetency to stand trial, took one and part of a second day and the proceedings occupy 285 pages of transcript. The factual situation developed in the hearing is ably set forth in Judge Decker's memorandum opinion and no purpose is served by restating it here. Judge Decker was of the opinion not only that a competency hearing was not required at

the time of the trial but that in fact Howell was competent at his trial. We are of the opinion that the result reached by the district judge is more than amply supported by the record and we adopt and approve his memorandum opinion pertaining to this issue although finding it necessary to add observations on certain phases thereof.

It sometimes happens a case relied upon or a legal principle invoked by a lower court is found to be altered or superseded at the time a decision is to be reached on the case on appeal. That was true here. Thus, Judge Decker relied in part upon Heard v. United States, 263 F.Supp. 613, 617–618 (D.D.C.1967). The case was subsequently reversed and remanded on appeal. Heard v. United States, 129 U.S.App.D.C. 100, 390 F.2d 866 (1968). However, the court of appeals did not decide whether the record required a § 2255 hearing on the appellant's claims regarding mental incompetency but since the case was being remanded on other grounds thought that the claims regarding mental incompetency should also be heard. No hearing had been held there by the district judge as contrasted to the extensive hearing accorded the appellant here by Judge Decker. The legal principles involved in the district court decision in *Heard* are still applicable and were correctly applied by Judge Decker.

■■ We particularly emphasize the principle that the bare fact of recognized addiction to narcotics over a long period of years is not per se evidence of incompetency at the time of a trial. It may well be that a person using narcotics while the trial is in progress could be found not to be competent to stand trial. This, however, is a factual matter. As far as Judge LaBuy himself is concerned the principal, if not the only reference in the record before him, as to addiction on the part of Howell was indication to that effect at the time he had been arrested in Pennsylvania in March of 1963, a year before the trial. While we are not unaware of the apparent difficulty of "shaking the habit," we do not deem that this rises to a presumption of once an addict always an addict nor are we aware of any requirement imposed upon a trial judge which requires him forthwith to hold a competency hearing once he learns that some time in the past a person has been an addict.

As Judge Decker correctly points out, the record of the trial is devoid of any of the indicia or manifestation of incompetency resulting from current narcotic use which would have prompted the court to make any inquiry as to competency or physical condition.

Howell urges error in connection with this issue because Judge Decker permitted testimony by attorney Golding, who represented Howell during the trial. The contention here is that permitting the testimony constituted a breach of the attorney-client privilege in that it would of necessity require disclosure of privileged conversations and confidences. Reliance is placed on Gunther v. United States, 97 U.S.App.D.C. 254, 230 F.2d 222 (1956). The reliance is, in our opinion, misplaced in the case before us. In *Gunther* the lawyer was asked whether in his opinion as a layman he felt Gunther was competent to stand trial and assist him during the course of the trial. The Court of Appeals of the District of Columbia was of the opinion that if trial counsel could be called by the government and asked to give an opinion on these matters, he could necessarily also be asked for the factual data upon which he premised his opinion and this would in turn open the door to the entire relationship which would not only be a violation of the attorney-client privilege but would also invade the accused's right to counsel in the trial of a criminal charge.

■ If there is in fact a conflict between circuits on this issue, we think the better view is that which is expressed by the majority opinion in United States v. Kendrick, 331 F.2d 110, 113 (4th Cir. 1964). The court there points out that it is the subject of the communications which is protected by the attorney-client privilege and not the fact that there

have been communications. Also, excluded from the privilege are physical characteristics of the client, such as his complexion, demeanor, his bearing, sobriety and dress. Judge Decker, relying upon *Kendrick, supra,* and limiting the testimony along the guidelines laid down in *Kendrick,* permitted the testimony.

To the extent, if any, that Golding's testimony did go beyond the delimiting pale, there is another aspect of the present case which, as far as we can ascertain, did not exist either in *Kendrick* or *Gunther.* That is the fact that Howell himself took the witness stand prior to the testimony by attorney Golding and testified with some specificity regarding conversations with his attorney. This was initiated on his direct examination when he was asked if he remembered any particular conversation that he might have had with his attorney in furnishing information to assist in his own defense during the course of this ·trial. Howell replied that he remembered Golding as a lawyer and telling him that he had a conspiracy case but had no other memory. However, on cross-examination when asked if Golding had not asked him if he wanted to take the witness stand and told him to go home and think about it, he replied, "That's new to me." He said he had not taken the witness stand and did not remember having any conversation with Golding about taking the witness stand.

When Golding subsequently testified, he stated that he certainly did have a discussion with Howell. He further testified that he told Howell that he might take the witness stand or he might not, that it was his, Golding's, suggestion as an attorney that he not take the stand but that he should go home and talk it over with his wife. Golding continued that the next day Howell came in and said, "I am not going to take the stand."

While there is perhaps a danger of admitting nonexpert opinion testimony in a situation of the type here involved, certainly the last example given was factual and although involving communica-

tion was one on which the door had been opened by Howell.

While we have indicated that testimony of attorney Golding was properly admitted into evidence, we do note that Judge Decker expressly stated that he reached the result he did " \* \* \* either with or without the testimony of attorney Golding. \* \* \*" This was not a jury case where the problem would be implicit as to whether a judge's admonition to disregard certain testimony was effective. Here we must take at face value Judge Decker's indication that the same result would have been reached if Golding's testimony had not been before him.

Also, what was before Judge Decker as background matter as to both issues before him was the fact that attorney Golding was not a court appointed counsel who came into the case shortly before trial and who for that and other reasons was claimed to be ineffective by Howell. On the contrary, Golding was a Texas attorney who had represented Howell's co-defendants in the case there. Howell apparently felt that as a result of Golding's representation in the Texas case all of the other convictions except his had been reversed. Howell obviously had confidence in the attorney and called Texas to have Golding come to Chicago to represent him.

Howell also urges error by a denial of due process occasioned by the United States Attorney's failure to notify the trial court of his knowledge concerning Howell's possible incompetency inasmuch as it was his duty to do so pursuant to 18 U.S.C. § 4244, which reads in part as follows:

"Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or

properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. * * *"

While there was passing reference in the first § 2255 motion to the prosecution being aware that Howell in fact was a narcotics addict, the basic thrust of this motion was that the facts were sufficient for the court sua sponte to cause a hearing to be heard at the time. It was not until Judge Decker was in the course of ruling on Howell's motion for a new trial that Howell's counsel first directly adverted to an obligation of the prosecution to call to the court's attention the facts regarding addiction.

We have been unable to find that Judge Decker's attention was directed to 18 U.S.C. § 4244 and the memorandum opinion of Judge Decker does not directly deal with the issue. Although it might be argued that the matter is being raised for the first time on this appeal, we shall nevertheless consider this contention.

The testimony at the competency hearing indicates that the United States Attorney apparently was aware that the defendant theretofore had been subject to addiction. There, however, is not any showing that the United States Attorney was aware of his being on narcotics at the time of the trial. Howell relies upon some of the testimony of the prosecuting attorney adduced at the competency hearing, mainly to the effect that because of his knowledge of the background of addiction he was observing Howell during the course of the trial. The evidence is clear, however, that the United States Attorney despite his observing of Howell during the trial noted none of the customary symptoms of a drug user.

▉ While knowledge on the part of the United States Attorney during the course of the trial of present addiction by Howell possibly should have indicated that a request should be made to the court for a competency hearing since the use of narcotics can affect a person's mental competency, Hansford v. United States, 124 U.S.App.D.C. 387, 365 F.2d 920, 922 (1966), we do not find the failure to do so on the particular factual situation here involved to constitute reversible error.

The ruling of Judge Decker on the first ground following a full hearing is not subject to reversal. A more difficult situation is presented by the second ground on the first § 2255 motion. The factual situation involved, as alleged in the motion, is generally as follows. While driving through Pennsylvania on February 14, 1963, with Robert Owens and another individual, Howell was stopped by a state policeman for a traffic violation. He was unable to explain to the officer's satisfaction his authority to drive the automobile, which was not registered in his name, and the patrolman began a search of the vehicle. During the search the officer observed a hypodermic needle and a burnt bent spoon, being to him tools of a narcotics user. The three individuals were transported to a police substation where Howell was searched. Incident thereto, a brown paper bag containing white powder, later identified as heroin, was found in his shoe. He was arrested and interrogated. Although the incident predated Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the state trooper advised Howell, prior to his making statements here involved, that they could be used against him.

Howell further claims that at the time of his arrest, and prior to and during his interrogation, he was under the influence of a narcotic drug. This allegedly was wearing off at the time of the oral interrogation in midafternoon and Howell became sick with withdrawal symptoms. Howell allegedly told Corporal Robbins, the principal interrogating officer, that he, Howell, was an addict and was unable to talk because he was ill. Allegedly Corporal Robbins pushed the package containing the heroin, along with the hypodermic needle and spoon across the desk to Howell and told him that he could take a shot if Howell would tell him about

the source of the heroin. Howell "agreed to tell him, was permitted to take a portion of the heroin from the package, and gave himself a shot. * * .* "

Howell then told the officers where he obtained the heroin. At 7:55 p. m. on the same day, he allegedly was again interrogated by Corporal Robbins and one other trooper so that his previous oral statement could be reduced to writing. He again asked Robbins for another shot of heroin telling him that the effect of the previous shot was wearing off. Corporal Robbins told Howell that he was unable to give him any more heroin from that package but that he would send a doctor to take care of him so that he would not be sick. Allegedly, Howell then signed the statement which had been prepared and later that night a doctor arrived as promised who did give the appellant a shot and other medication to relieve withdrawal symptoms.

The foregoing statement is taken in part from the § 2255 motion itself which was verified on April 7, 1967 and which we may safely assume was prepared by Howell's counsel. The balance of the foregoing statement is taken from Exhibit A, being one of two affidavit exhibits attached to the § 2255 motion. Exhibit A was verified on February 10, 1967 and is in long hand as contrasted to the typed § 2255 motion itself. It appears to have been prepared at the prison in which Howell was incarcerated.

We note that Exhibit A is explicit and detailed in chronology of the events of the afternoon and evening and we have adopted in the foregoing statement the factual information contained in the affidavit, Exhibit A. These events were slurred over in the § 2255 motion itself, which indicates that after Robbins permitted Howell to administer heroin to himself that Robbins then stated "we have helped you, now you help us," and then asked for a statement which Howell

gave to him. The motion states that this statement was offered and received in evidence as the government's Exhibit 3 in the original trial as proof of Howell's participation in the alleged conspiracy. According to Howell's hand printed affidavit Exhibit A, however, the oral statement occurred between 3:30 and 4:30 and the statement was not reduced to writing until sometime after 7:55. It is also of interest to note that Howell in his hearing before Judge Decker indicated that he had, while in prison, read the transcript of the original trial a number of times. This transcript reflected a fact of which Howell, at the time of preparing his affidavit, could not have been unaware, that at approximately 6 o'clock the substance in the bag was tested and was then turned over to another detective. It was out of the possession of Robbins until February 23, 1963.

We find no indication in the record of the original trial to indicate that anything of significance orally stated in the afternoon by Howell to the trooper was not incorporated in the evening written statement.[1] Because of the cruciality of the written statement, we have attached the complete statement as introduced into evidence to this opinion as an appendix. We do note that the statement as prepared apparently contained a reference to Howell's having a gun in the automobile but the government was willing to have this portion of the statement deleted in the exhibit read to the jury. Indeed, the government offered to delete the references to Howell being an addict but his attorney refused this offer. This appears to have been part of the trial strategy of the attorney to the effect that the heroin found in Howell's shoes was for his personal use and that this was supported by the reference in the statement to his addiction. As a matter of fact, the contention that what Howell had in Pennsylvania was for his own use

---

1. The only discrepancies that we note, which were brought out in the trial, were that orally Howell had said he paid $500 for the heroin but at the time of the written statement he said he had paid $350 and also that Howell had orally said that he made 67 trips to New York City, which was not incorporated into the written statement.

exclusively was carried into final argument to the jury.

The difficulty to which we have heretofore adverted in the present situation is again resultant from a decision rendered subsequent to the determination of Judge Decker that the present issue did not necessitate an evidentiary hearing. In making this determination the court correctly interpreted the then applicable law and held that Howell could not "at this late date raise this issue for the first time in this Section 2255 proceeding." Howell v. United States, *supra*, 282 F. Supp. at 252.

■ Subsequent to Judge Decker's memorandum opinion the Supreme Court in Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), clearly established that the constitutional claim of a federal prisoner is available as a ground for collateral attack in a § 2255 motion even though not raised in a direct appeal. The present issue was not raised either in the trial before Judge LaBuy or in the direct appeal to this court. United States v. Owens, 346 F.2d 329 (7th Cir. 1965).

■ Taking Howell's § 2255 allegations at face value they clearly present a case of involuntariness as to his statement to the police. Such a statement must be free and voluntary and must not be extracted by any sort of threat or violence or obtained by any direct or implied promises however slight nor by the exertion of any improper influence. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Psychological as well as physical intimidation can result in a confession being coerced. Townsend v. Sain, 372 U.S. 293, 307, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). To be admissible a confession must be "the product of a rational intellect and a free will." Blackburn v. Alabama, 361 U.S. 199, 208, 80 S.Ct. 274, 281, 4 L.Ed.2d 242 (1960).

Therefore, pursuant to *Kaufman,* since 28 U.S.C. § 2255 provides for a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, * * * *" we must determine whether on the basis of the motion and other documentary matters before Judge Decker Howell was conclusively shown to be entitled to no relief.

We first turn to the transcript of the trial before Judge LaBuy which, on motion of Howell, was made a part of the record before Judge Decker "[f]or whatever it shows."

In so doing we put aside what might be a natural incredulity regarding the likelihood that a state policeman who had seized critical evidence believed to be contraband narcotics would dispose of a part of the evidence in the manner claimed. Howell's Exhibit A affidavit attached to his § 2255 motion suggests that the interest of the state police was in securing the identity of his source. Arguably a police officer might deviate from his clear duty in an effort to get at a narcotics ring. We cannot help noting that if this is what the police were bargaining for there was what was close to a failure of consideration. The only reference whatsoever in the statement as to source was the following:

> "The following morning I rented a Hertz Rental car and drove to Harlem. I called an addict and got him to get the stuff for me. I'd rather not give you the name. I'm the one that got caught. I met him on a 125th Street in Harlem and paid him $350."

*Kaufman, supra,* 394 U.S. 217, 89 S.Ct. 1068, does not deny to the § 2255 judge credibility determination and at the outset it appears incredible that a state policeman realizing that he had this "hold" over a drug addict would not have relentlessly pursued the subject of the source, having been willing to subvert critical evidence to gain the information.

Upon the trial, counsel for Howell indicated he would object to the admission of the statement in evidence since it was an answer secured while Howell was under arrest without a warrant and was without counsel. He did not contend that

the statement was involuntary for any reason but on the contrary we find the following colloquy during a voir dire hearing on the statement:

"And I will tell you very frankly, Judge, why I feel that way, in all candor. This statement, I take it, was voluntary, and that being the case—

"THE COURT: Was what, do you say?

"MR. GOLDING: *Voluntary.*

"THE COURT: Voluntary.

"MR. GOLDING: And that being the case, I think this statement as a whole simply implements the position that was taken by defendant Howell this morning with reference to the motion to suppress, and that it is not in furtherance of the conspiracy as termed.

"Here you have in the statement mention of his being an addict. Now, from all intent and purposes perhaps he went to New York City and got this to supply his want in that connection. For all we know that is the purpose of the statement that he made. And if it be so, then we must presume these things because it is not an inference; *it is a voluntary statement which he made.*" (Emphasis supplied.)

█ It is true that the apparent trial strategy was to deny the existence of the conspiracy, the only charge against Howell, by claiming that the possession of the narcotic and the trip to New York was solely for Howell's personal need. While we desire fully to protect all constitutional rights of a criminal defendant, we do not look with any particular favor upon resort to a different and inconsistent ground, albeit constitutional, in post-conviction proceedings when a course consciously chosen during trial has proved unsuccessful.

█ The only act charged against Howell in Count Five of the indictment, the one in which he was involved, was that to effect the objects of the combination and conspiracy, "on or about February 12, 1963, the defendants Robert Owens and Eugene Howell left Chicago, Illinois, in an automobile." Insofar as the possession and transportation of narcotics was concerned, that was proven entirely independently of the statement in question by the evidence of the state policeman who found the tools of a narcotic user in the car and the narcotic itself on Howell's person. This court in United States v. Owens, *supra*, 346 F.2d 329, had before it and ruled that the trial court's denial of the motion to suppress the heroin seized from Howell following his arrest in Pennsylvania was a correct ruling. That matter, therefore, is not before us.

Howell's motion makes it clear that the thrust of his complaint with regard to the admissibility of the statement is that the overt act alleging that Owens and Howell left Chicago together was proven exclusively by the uncorroborated admission made by Howell in the Pennsylvania police station. While both Howell and Owens denied to the state trooper that Owens was in any way aware of the transportation, Robbins also testified, without contradiction or objection, that Owens had told the officer that the occupants of the vehicle had come from Chicago and went to New York and were on their way back. Thus, the assertion in the § 2255 motion that the overt act was uncorroborated is incorrect.

█ Also, we note with regard to the possession of the heroin that Howell pled guilty to this charge in the state court of Pennsylvania which itself is a judicial admission.

At the outset of the statement, the state trooper advised Howell that no promises were being made to him. Counsel for Howell was not unmindful that promises might reflect upon the voluntariness of the statement as reflected by his cross-examination of Robbins in which he asked if it was not a fact that prior to Howell signing the statement that he, the policeman, had told Howell if he signed the statement Owens and the other man in the automobile would be

released. Robbins denied any such statement. This, incidentally, would seem to reflect upon whether Howell had communicated to his attorney the facts regarding the incident of giving the statement.

Assuming, however, that the statement which Robbins incorporated in the signed statement to the effect that no promises had been made was a self-serving one which should be disregarded, the testimony further reflects that after the statement had been reduced to writing, Howell was taken before a justice of the peace. The justice of the peace asked Howell if he made this statement and whether it was his signature. He said that it was. The justice of the peace then asked Howell if he was promised anything to make this statement or whether he was threatened and he said he was not in answer to both questions. The justice of the peace then asked him to swear to the statement as to being true and correct and the justice of the peace subscribed to the statement.

 Objections to admissibility of the statement and the opportunity for Howell to advance objections to its admissibility occurred during voir dire hearings outside the presence of the jury. For the purpose of this appeal we do not attach any significance to nor draw any inference from the fact that Howell did not take the stand during the voir dire hearing to assert that he had given the statement only because of his need for heroin at the time of the oral statement accompanied by the promise of relief at a later time when he gave the written statement. Nevertheless, we do note in passing that at such a voir dire hearing he would have been able to have testified on the issue without relinquishing his privilege to remain silent at the trial. United States v. Nielsen, 392 F.2d 849, 852 (7th Cir. 1968).

In Wright v. United States, 102 U.S. App.D.C. 36, 250 F.2d 4, 13 (1957), the court stated the following:

"To substantiate a defendant's contention that his confession was involuntary, it is generally necessary for him to take the stand. Since it is a matter of course that the defendant should be allowed to testify to the involuntariness of his confession without waiving his privilege against self-incrimination, 3 Wigmore, Evidence 345 (3d Ed. 1940), it follows that, when he requests it, he should be given a hearing without the jury."

 Although a delay in filing a § 2255 motion is not a controlling element, it may be an important factor. Parker v. United States, 358 F.2d 50, 54 n. 4 (7th Cir. 1965); Raines v. United States, 423 F.2d 526, 531 (4th Cir. 1970). Thus Howell's assertion of the involuntariness of the statement, coming nearly three years after the trial and following extensive study of the trial record, is not wholly unsupportive of the assertion being a fabricated afterthought.

Finally, we note the two affidavits attached to the § 2255 motion. Exhibit A deals with the issue of the voluntariness of the statement and the Exhibit B affidavit concerns the alleged use of narcotics during the trial. In Exhibit A, Howell details with crystal clarity the exact chronology of events with specific reference to what occurred at a time when he supposedly was experiencing withdrawal symptoms. As a matter of fact, he did not even have an injection prior to the second statement. Yet, in Exhibit B when it was serving another purpose he states that while under the influence of narcotic drugs, one of the symptoms is memory lapses and further that the effects of withdrawal are that the entire thoughts are limited to the concentration on obtaining of the injection. While this would support his claim that he gave the statement under this inducement it is also highly inconsistent with his clarity of memory of the events of the afternoon.

Disregarding completely the fact that Howell did not come forward with the

claimed factual background during the voir dire hearing and further disregarding completely the unlikelihood of the state police officer engaging in the conduct ascribed to him, a survey of the remaining factors hereinbefore set forth which were before Judge Decker convinces us of the correctness of his ruling denying an evidentiary hearing. In so determining, we do not single out any particular factor enumerated but rather rest upon the totality of the factors.

No doubt it would have been a simpler course merely to have cited *Kaufman, supra*, 394 U.S. 217, 89 S.Ct. 1068, 22 L. Ed.2d 227, and reversed and remanded to the district court for an evidentiary hearing on this issue. We have little doubt that the state trooper, if still alive, could be brought from Pennsylvania (or whereever he might now be) and that he would testify in negation of Howell's claim as he testified in effect on the original trial. But we are also concerned about the effective use of judicial manpower that should be spent on meritorious cases in today's atmosphere of crowded court dockets.

This would further seem to be a case that would bring into play the salutary admonition of Mr. Justice Cardozo in Synder v. Massachusetts, 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674 (1934):

> "There is danger that the criminal law will be brought into contempt—that discredit will even touch the great immunities assured by the Fourteenth Amendment—if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free."

Accordingly, we affirm the order of Judge Decker denying the petition to vacate the sentence.

Howell filed his second § 2255 motion on October 15, 1968, relying on the then recent decisions of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968). His contention was that he had been denied his constitutional rights of confrontation and cross-examination through the admission of extrajudicial statements of co-defendants implicating him as a "partner" in the alleged conspiracy.

Judge Marovitz thoroughly analyzed petitioner's claim in his memorandum opinion filed below. Howell v. United States, 300 F.Supp. 1017 (N.D.Ill.1969). Adopting his opinion and approving the reasons set forth in that opinion, we affirm Judge Marovitz's denial of Howell's motion.

Affirmed.

## APPENDIX

### Statement

Pennsylvania State Police Troop 'C'

Sub-District Two

Statement of Eugene Howell, age 34, 8352 South St. Lawrence, Chicago, Illinois.

Eugene, this is a State Police Substation, Troop 'C', Bedford, Pennsylvania. It is now 7:55 P.M., Eastern Standard Time, February 14, 1963. I am Corporal Newton C. Robbins, and this is Trooper Adam J. Kachurik of Troop 'C', Pennsylvania State Police. I mean to warn you that anything you say may be used against you in court. We are making no promises to you or threatening you in any way to obtain a statement from you. Now, are you willing to tell us in your own words what you know about the illegal possession of narcotics at Napier Township in Bedford County, Pennsylvania, during the 14th day of February, 1963?

A. Yes.

Q. Tell us in your own words just what you had been doing for the past several days?

A. I was with Robert Owens and we left Chicago on Tuesday. I was going to New York to make a buy on some heroin. Bob got some friends there and he didn't know my business. We got into New York Tuesday night about 9:00 or 10:00 o'clock and stayed at the Howard Johnson Motor Lodge. The following morning, I rented a Hertz Rental Car and drove to Harlem. I called an addict and got him to get the stuff for me. I'd rather not give you the name, I'm the one that got caught. I met him on 125th Street in Harlem and paid him $350.00. I tasted it and it was good and I was satisfied. I then went back to the Motor Lodge. It was in the morning that I got the stuff.

Q. The brown paper bag found in you [sic] right shoe, did this contain the heroin?

A. That's right.

Q. How long have you been using heroin?

A. About a year and a half;

Q. Are you a registered addict?

A. No.

Q. Do you have a prescription for the heroin or any type drugs?

A. No, I don't.

Q. Does Robert Owens or Leo Hightower know you to be an addict or that you were carrying heroin?

A. No, they didn't know, he wouldn't have let me in his car if he had known.

Q. I show you this spoon, needle and syringe, and ask you if it is your property?

A. Yes, it's mine, it was in my suit case in the trunk of the car.

Q. Is there anything you wish to add to this statement?

A. No.

Q. How have you been treated by the Pennsylvania State Police?

A. Fine.

Signed by Eugene Howell, witnessed by Adam Kachurik, Newton Robbins and subscribed before Cyril Bingham, Justice of the Peace.